## Vilas & Bacon, Appellants, *vs.* Jones & Piercy, Respondents.

The complainants were sureties for C. upon a note given to J. for a usurious loan of money. An action at law was brought upon the note against the complainants, and C. in the name of P., as endorsee. The complainants pleaded the general issue, and gave notice of the defence of usury, but did not verify the notice as required by the usury act of 1837, so as to entitle them to examine the plaintiff as a witness. On the trial, they called as a witness, J., the payee of the note, who stated, on his *voire dire,* that he was the owner of the note and the plaintiff in interest, and objected to testifying in the cause, and his objection was sustained by the Court. A verdict was taken for the amount equitably due on the note, and judgment was perfected against the complainants and C.; *held.* that a bill filed by the complainants, *after judgment at law,* for the purpose of obtaining the testimony of C., and for relief against the judgment on the ground of usury, could not be sustained.

*Held further,* that after judgment at law, the bill could not be sustained on the ground that the complainants, as sureties, were discharged by reason of the holder of the note having extended the time of payment to the principal debtor in consideration of a usurious premium paid by him in advance, it not being shewn that the complainants were prevented from setting up this defence in the action at law, by any fraud or accident, or by the act of the opposite party.

And per Bronson, J. and Jewett, C. J., an agreement made by a creditor with the principal debtor, to forbear the payment of the debt in consideration of a usurious premium paid for such forbearance, is void, and therefore cannot operate to discharge the sureties.

Whether a mere surety is a borrower, within the meaning of the usury act of 1837 (*Laws of* 1837, *p.* 487, § 4,) *quere.*

Appeal from Chancery. The appellants, complainants in the Court below, filed their bill in the Court of Chancery against the respondents, in which the case was stated in substance as follows: In April, 1839, Harvey Church borrowed of the defendant, Jones, $200 for six months, and was to pay for the use thereof at the rate of ten per cent. per annum. Church and the complainants, as his sureties, thereupon gave their joint and several note to Jones, at six months, for $210, being the sum loaned and the interest added thereto, including three per cent. for the usurious premium. At the end of the six months it was agreed, between Church and Jones, that the debt should be forborne for six months longer at the same rate of interest, which was then paid in advance by Church. One

or more other agreements to extend the time of payment were made at the same usurious rate of interest, which was also paid in advance. The bill insisted that the note was void for usury, also that the complainants, as sureties, were discharged from liability by reason of the time of payment being extended to Church, the principal in the manner above stated. In April, 1842, a suit at law was commenced on the note against Church and the complainants, in the name of the defendant, Piercy, as endorsee of the note. The complainants pleaded to the suit the general issue, and gave notice of their defences above mentioned; but it did not appear that the notice was verified by affidavit. The suit was brought to trial in May, 1842, and the complainants procured said Jones to attend as a witness, expecting, as the bill averred, to prove the facts above stated by him. But Jones, on being sworn as a witness, stated on his *voire dire*, that he was the owner of the note, and that the suit was brought for his benefit, and he thereupon objected to testifying in the cause. The Court sustained his objection. *Previous to the trial of the cause*, Jones had been applied to by the counsel of the complainants, to learn who was the owner of the note, and Jones stated that he had sold the note to Piercy, and that Piercy was the owner. The bill however did not shew that this false information was the reason why the complainants did not verify the notice annexed to their plea, so as to enable them to call Jones as a witness to prove the usury, under the act of 1837, or that they had been in any wise misled thereby.

The bill also alleged, that the facts on which the defence in the suit at law rested, were known only to Church and to Jones; that Church, being a co-defendant in the suit, and Jones, being excused from testifying as above stated, the complainants were unable to establish their defence, and a verdict was taken against them for $197,34, the amount claimed to be due on the note, for which amount and costs of suit, judgment was perfected against them and Church; that Church suffered judgment by default, and that he also refused to join in the bill of complaint; that said Church had instituted pro-

ceedings to be discharged as a bankrupt under the act of
Congress, passed August 19, 1841; that he was duly declar-
ed a bankrupt on the 16th of May, 1842, and (as the com-
plainants were informed and believed) that he would be enti-
tled to his discharge, and would receive the same before an
order to take proofs could be entered in this cause, so that the
complainants could have the benefit of his testimony to es-
tablish the matters of defence above set forth. The bill also
alledged that the complainants had released Church from all
liability over to them, in consequence of their signing the note
as his sureties. The prayer of the bill was for relief against
the judgment by injunction to restrain execution and all other
proceedings for the collection of the same from the complain-
ants, for answer without oath, &c.

The respondents severally demurred to the bill for want of
equity. The cause was referred for hearing to the Assistant
Vice Chancellor of the First Circuit, who allowed the demur-
rers, and dismissed the bill. The Chancellor on appeal af-
firmed the order.

*S. Stevens*, for appellants. The complainants are entitled
to relief on the ground of usury. They are to be deemed
borrowers within the equity of the act of 1837, so far as re-
gards the remedy given by that act. (*Laws of* 1837, *p.* 487;
*Perine et. al.* vs. *Striker*, 7 *Paige* 598.) This defence was
not available in the suit at law. Church, being a co-defend-
ant in that suit, could not be examined as a witness. Jones,
the payee of the note, the only other person to whom the
facts were known, declined to testify, and his objection was
sustained by the Court. (*Cook* vs. *Spaulding*, 1 *Hill* 586.)
This presents a case upon which a Court of Equity will relieve
after judgment. (*Norton* vs. *Woods*, 5 *Paige* 249; *Morse* vs.
*Hovey*, 1 *Barbour Ch. Rep.* 404.)

Church was not a necessary party to the bill. After suffer-
ing judgment at law, by default he could have no claim to re-
lief in equity; nor could any decree to be pronounced in this

cause affect him in any way. (*Story Eq. Pl.* §§ 231. 443, 445.)

The extension of the time of payment given by Jones, the creditor, to Church the principal debtor, without the consent of the complainants, who were mere sureties, discharged them. This defence is personal to themselves, and entitles them to the relief prayed by the bill. (*Rathbone* vs. *Warren,* 10 *Johns.* 587 ; *King* vs. *Baldwin,* 17 *do.* 384 ; *Miller* vs. *McCan,* 7 *Paige* 451 ; *Burge on Suretyship,* 197, 211.)

*James Edwards,* for the respondents.

I. The appellants having suffered judgment at law to pass against them on a trial upon matters which, if proved, constituted a defence at law, and of which they were fully cognizant before the trial, cannot be relieved from such judgment in equity. (*Simpson* vs. *Hart,* 4 *Johns. Ch. R.* 91 ; *Gelston & Schenck* vs. *Hoyt,* 1 *Johns. Ch. R.* 543 ; *Barker* vs. *Elkins & Simpson,* 1 *Johns. Ch. R.* 465 ; *Norton* vs. *Woods,* 5 *Paige* 249 ; *Bates* vs. *Bagley,* 1 *Breese's R.* 60 ; *Cown* vs. *Price,* 1 *Bibb's R.* 173 ; *Penny* vs. *Martin,* 4 *Johns. Ch. R.* 566 ; *Northrup and al.* vs. *Survivor of Lane and al.* 3d *Dessausure's Repts.* 324 ; *Bateman* vs. *Wilson,* 1 *Sch. and Lefroy R.* 201–4 ; *Williams* vs. *Lee,* 3d *Atkins' R.* 223 ; *Green* vs. *Dodge and al.* 6 *Hammond R.* 80 ; *Thompson* vs. *Berry, and al.* 3d *J. Ch. R.* 395 ; *Thompson* vs. *Berry,* 17 *J. R.* 446, *on appeal; Duncan* vs. *Lyon,* 3 *J. Ch. R.* 351 ; *Campbell* vs. *Morrison,* 7 *Paige R.* 157 ; *McVicker* vs. *Woolcott,* 4 *J. R.* 510 ; *Cowen and Hill's Notes,* 949, 950.)

II. The appellants coming into this Court to set up a defence which they might have interposed at law, must do equity before asking it, and as the verdict was for no more than the original loan with the lawful interest on it, after deducting the payments, equity will not relieve them therefrom on the ground of usury.

III. If the Court erred in excusing Jones from testifying, the remedy was by a bill of exceptions, and not by a bill in

equity: (*Henry and Pierce* vs. *The Bank of Salina*, 5 *Hill* 523; *Stevens* vs. *White*, 5 *Hill* 548.)

BRONSON, J. Harvey Church as principal, and the complainants as his sureties, made their joint and several promissory note for two hundred and ten dollars, payable to Jones, who endorsed it to Piercy. After Piercy had sued and recovered judgment on the note at law, against all of the makers, the complainants filed their bill in the Court of Chancery to be relieved against the judgment, on the ground that the note was void for usury; but they neither paid nor offered to pay the money actually loaned, nor the legal interest thereon. Unless the case has been provided for by our recent usury statutes, it is entirely clear that such a bill cannot be maintained. It is a fundamental principle of the Court of Chancery that he who asks equity must do equity; and without an express command of the Legislature, the Court of Chancery never does so unjust a thing as to entertain a bill to annul a contract on the ground of usury, without requiring the debtor to do equity on his part. He must return, or offer to return, what he actually received, with interest. The principle is a familiar one, and I need not cite authorities to support it.

Before examining the statute it is proper to notice, that the bill states, in express terms, that the agreement for the loan which the note was given to secure, was made between Jones and Church; and that the loan was actually made by Jones to Church. And it is not stated that the complainants had any thing to do either with the agreement or the loan. They only became sureties for the re-payment of the money.

Let us now see what the Legislature has done. It has set aside the rule of equity which has been mentioned, in favor of the "borrower" of the money, but not in favor of any one else. (1 *R. S.* 772, § 8, *Stat.* 1837, *p.* 487, § 4.) It will only be necessary to notice the last act, as that goes further than any usury law which preceded it. The 4th section is as follows: "Whenever any *borrower* of money, goods, or things in action, shall file a bill in Chancery for relief or discovery,

or both, against any violation ' of the usury laws,' it shall not be necessary for *him* to pay, or offer to pay, any interest or principal on the sum or thing loaned." The word "borrower" is again used near the close of the section, without anything to enlarge its ordinary signification. There is, I think, no established rule of interpretation which will so enlarge this provision as to make it include the sureties of the borrower. It cannot be carried so far without indulging a latitude of construction which would amount to a new enactment. I am aware that the Chancellor and the late Mr. Justice Sutherland, have respectively intimated an opinion that the surety is a borrower within the meaning of the staute. (*Perrine* vs. *Striker*, 7 *Paige* 602 ; *Livingston* vs. *Harris*, 11 *Wend.* 336.) But the point was not decided in either case. Both turned upon other grounds ; and in the case before the Chancellor, the bill was filed by the borrower in conjunction with the surety. It may be true, as was remarked by Mr. Justice Sutherland, that there is no reason, *in the nature of the case*, why the surety should not have all the remedies and means of defence which are given to the principal debtor. But that does not settle the point. The question still remains, whether the Legislature has given the same remedies and means of defence to both. I think not. The agreement to borrow, and the security for the loan, are two things, and the borrower and his surety are two persons. The Legislature has given a new and peculiar remedy to one, and only one, of those two persons ; and I see no principle upon which the Courts can so extend the enactment as to make it include both. It is quite possible that the Legislature, in its zeal to regulate this branch of trade, and make money cheap when it is scarce, as well as when it is plenty, would have given this new remedy to the surety as well as the borrower, if the thing had been thought of. But if it is a *casus omissus* in the statute, it is for the Legislature, and not the Courts, to supply the defect. (*Jones* vs. *Smart*, 1 *T. R.* 52.) To bring a case within the statute, it must not only be within the mischief contemplated by the Legislature, but also within the fair import of the words which

the Legislature has used. (*Brandling* vs. *Barrington*, 6 *T. R.* 469; *Dwar. Stat.* 711.) I had occasion to remark, in *Waller* vs. *Harris*, (20 *Wend.* 561,) that the current of authority at the present day was in favor of reading statutes according to the natural and most obvious import of their language, without resorting to subtle or forced constructions for the purpose of either limiting or extending their operation. If we read the statute under consideration, in that way, indeed, if we do not take a most unwarrantable license with the language which the Legislature has used, the word "borrower" cannot be made to include the borrower, and his surety also. It is true that a majority of the Court of Errors gave a pretty large construction to the word "plaintiff," in another section of this statute. (*Henry* vs. *Bank of Salina*, 5 *Hill* 523.) But there was some color for that decision; while, in my judgment, there is no solid ground for saying, that the word "borrower" includes one who did not borrow, and who had no other connection with the transaction than that of becoming a surety for the man who did borrow.

I have thus far considered the case as though the statute was remedial only, and ought therefore to have a liberal construction. But if the statute is remedial, it is also penal. It not only creates a forfeiture of the debt, but it punishes the lender as a criminal. The very section under consideration was made for the purpose of bringing about a forfeiture of the money actually loaned. All the books agree that penal statutes are to be construed strictly; and I am not aware of any principle upon which such a usury law as we have can be made an exception to the general rule. There is, however, no occasion for applying a strict construction in this case.

The conclusion from what has been said may be stated in few words. Church, who borrowed the money refused to join with the complainants in filing the bill; and he is not a party to it in any form. As the bill was not filed by the "borrower," the case does not come within the provision of the statute which relieves him from the necessity of paying, or offering to pay, the money actually loaned. The complainants are enti-

Vilas & Bacon *v.* Jones & Piercy.

tled to no such favor, because the statute does not give it to them; and when they go into Chancery they are met by that cardinal principle of the Court, that he who asks equity must do equity ; and as they had not paid, nor offered to repay the the money loaned, with interest, the bill was properly dismissed, so far as relates to the question of usury.

2. There is a further reason why this case does not come within the statute, and a reason which would exist though Church had joined with the complainants in filing the bill. This statute, like all other laws which provide a remedy or defence, must be understood as applying only to a remedy or defence which is set up or pursued before the matter has passed into judgment. It would be strange indeed if a party could wait till after judgment, and then insist on a remedy or defence which might have been available had it been put forward at the proper time. When, therefore, the borrower does not move until after a judgment against him at law, if he can then go into Chancery at all, he cannot do it as a matter of right under this statute, but only as a matter of equity under the general powers of the Court : and when he cannot come with the statute in his hands, the answer of the Court is, you must do equity, or offer to do it, before you can be heard.

There are then two reasons why this case does not come within the statute : (1.) the bill was not filed by the borrower of the money ; and (2.) it was not filed until after a judgment had been recovered on the note. And as the statute must be laid out of view, the bill was properly dismissed, because the complainants did not offer to return the money actually loaned, with interest.

II. There is a further difficulty in the way of the complainants : they have appealed to Chancery after a trial and judgment against them at law ; and the bill shows no sufficient ground for granting relief. I am still speaking of that branch of the case which rests upon the charge of usury.

When a party goes into Chancery after a trial at law, he must be able to impeach the justice and equity of the verdict ; and it must be upon grounds which either could not be made

36

available to him at law, or which he was prevented from setting up by fraud, accident, or the wrongful act of the other party, without any negligence or other fault on his part. The cases were cited at the bar and I need not repeat them.

The defence was available at law ; and the only difficulty which the complainants met with there was, the inability to prove it. The bill states in substance, that Jones was the only witness, and the complainants expected to prove the usury by him. Prior to the trial their counsel applied to Jones to learn who was the owner of the note ; and he answered, that he had sold the note to Piercy, the plaintiff on record in that suit, and he was the owner of it. On the trial, the complainants called Jones, and he testified, that he owned the note ; that the suit was brought for his benefit, and Piercy had no interest in it. The Judge therefore decided that Jones could not be required to testify, without his consent.

To the case thus made by the bill, there are several decisive answers.

1. If Jones told a falsehood in relation to the ownership of the note previous to the trial, there is no allegation in the bill that the complainants were deceived or in any way misled by it, or that they omitted to do anything which would have been done had Jones spoke the truth. There is no charge or statement in the bill that the declaration of Jones had any influence whatever upon their conduct, or that it contributed in any degree to the defeat which they suffered in making out the defence. We cannot see, from the nature of the case, that the complainants must have been injured by the falsehood ; and as they have made no such charge, we cannot presume that they were injured. It would be a new and most dangerous precedent, to allow a party to go into Chancery for a new trial because his adversary had told a falsehood, without showing, or even alleging, that the falsehood had led to the defeat in the trial at law, or been in any degree instrumental in bringing about that result.

2. It may be inferred from the bill, and such also is the suggestion of the counsel, that Jones was excused from swear-

ing to the usury, on the ground that he was the plaintiff in interest, and not being the plaintiff on record, he could not be compelled to answer under the 2d section of the usury act of 1837. That was an erroneous ruling of the Judge, according to the decision of the Court of Errors in *Henry* v. *Bank of Salina*, (5 *Hill*, 523 ;) and the remedy of the complainants was a bill of exceptions. This is probably the first case on record where a party who has been defeated by an erroneous decision at law, has resorted to a bill in equity, instead of a bill of exceptions, to correct the error. But if it is not the first, I trust it will be the last case where such an experiment will be tried.

In *Perrine* v. *Striker*, (7 *Paige*, 598,) the Chancellor dismissed a bill filed by the borrower and his surety, on the ground that they had an adequate remedy at law, by examining the plaintiff to prove the usury, under the second section of the act of '37. The bill was filed before there had been a trial at law, and in pursuance of the express words of the 4th section of the same statute. If it was proper to dismiss the bill in such a case on the ground that there was an adequate remedy at law, no one can doubt that it was proper to dismiss this bill for the same reason.

3. The Court of Chancery will not aid a party after he has had a trial at law, unless he impeach the justice and equity of the verdict. Now in this case, instead of taking a verdict for the amount of the note with interest, which at the time of the trial was about $245, the plaintiffs took a verdict for only $197,34 : and it was stated on the argument by the defendant's counsel, and admitted by the counsel for the complainants, that this was no more than the sum actually loaned with legal interest, after deducting all payments, according to the statement of those matters made in the bill. This then is a just and equitable verdict ; and yet the complainants have gone into Chancery to get rid of it, and bring about a forfeiture of the whole debt. No precedent for such a bill was mentioned at the bar, and I presume none can be found.

III. Another objection to the bill is the want of proper

parties. Church and the complainants were joint makers of the note, and they were all sued together. The defence of usury is common alike to all: it is as good a defence for Church, as it is for the complainants; and yet Church has not been made a party to the bill. The whole controversy cannot be settled in this suit; for another bill may be filed by Church, and the defendants be thus subjected to a double litigation. True, the complainants say, that Church suffered judgment to pass against him by default; and that he refused to put in a plea, or to join with the complainants in filing this bill. But Church has a right to speak for himself; and until he has been heard, either as complainant or defendant, he cannot be concluded by this litigation. In *Miller* vs. *McCan* (7 *Paige* 457,) where the surety was allowed to maintain a bill against the creditor, without making the principal debtor a party, the equity on which the bill was founded was peculiar to the surety, and such as could not under any circumstances be made available to the principal debtor. It is not so here; and the non-joinder of Church is a fatal objection. *Briggs* vs. *Butler* (9 *Paige* 226,) reversing the decree of the V. C. of the 8th Circuit, (*Clarke V. C. Rep.* 517,) is a case in point.

I have now done with that branch of the case in which the complainants ask relief on the ground that the note was void for usury.

*Second.* The complainants set up as another ground of defence to the note, that they were sureties for Church; and that after the debt became due, Jones, without their knowledge or consent, gave further day of payment to the principal debtor.

1. The first answer to this branch of the case is, that the complainants have tried or had the opportunity of trying, that matter at law, where it is as good a defence as it is in equity; and no sufficient reason is shewn for a subsequent appeal to the Court of Chancery. A portion of what has been said on the same subject in relation to the other branch of the case, is equally applicable here, and need not, therefore, be repeated.

But there is something to be added. It appears from the bill, that the complainants were apprised of the facts before they pleaded at law, and gave notice of this defence with the general issue; and further, that they went to trial with the knowledge that no one could prove the defence but Jones or Church. As Church was a party to the record, the complainants knew that he could not be sworn. They say in the bill, that they "expected" to establish the fact of giving time by the testimony of Jones. That is a falsehood in point of law, if it be not also a falsehood in point of fact. Jones could be called in only one of two characters—either under the usury act, as plaintiff in interest, (*Henry* v. *Bank of Salina*, 5 *Hill*, 523,) or simply as a witness. He could only be called as the plaintiff in interest, "for the purpose of proving the usury;" (*Stat.* '37, *p.* 487, §.2,) and not for any other purpose whatever. (*Bank of Salina* v. *Henry*, 2 *Denio* 155, affirmed 1 *Comst. See ante* 83.) He could not be called as plaintiff, for the purpose of making out the defence of which we are now speaking.

Let us now suppose him called as a witness merely, having no interest in the event of the suit. According to the statements in the bill, the facts to be proved by him to make out this branch of the case were, that he had on several occasions charged and received usury for forbearing and giving further day of payment on the note. He must then have been called to prove facts which would show him guilty of a misdemeanor punishable with fine and imprisonment; (*Stat.* 1837, *p.* 487, § 6,) and of course he was not obliged to answer. So far as relates to this branch of the case, the objection which he made to giving evidence, was properly allowed by the Court. Now if we assume in favor of the complainants, what is not alleged in the bill, that they were misled by the falsehood imputed to Jones, and acted upon the assumption that he had no interest in the suit, and might therefore be called like any other witness, the complainants must still fail in this branch of their case; for they either knew, or were bound to know, that Jones could not be compelled to testify to the facts which they proposed to prove by him. This disposes of every shadow of ex-

cuse set up in the bill for resorting to Chancery for a new trial, after having had a trial at law.

2. There is another answer to this branch of the case which I deem entirely conclusive. Merely giving further time of payment to the principal debtor, without the consent of the surety, is no defence for the latter; time must be given in pursuance of a valid contract for that purpose, which ties the hands of the creditor, so that he cannot sue if he would. If the agreement be not under seal, it must, like other contracts by parol, appear to be founded upon a sufficient legal consideration. In this case the original note was never given up; Jones kept it in his hands, and might have brought a suit upon it at any time after it fell due, unless he was restrained by some binding agreement. Now each and every extension of time mentioned in the bill was made upon an usurious contract, such as is expressly declared to be void by statute. In every instance Church agreed to pay more than the legal rate of interest for the forbearance; and in most of the cases, the payment was actually made. It has not been suggested that a promise to pay usury in future, an engagement that is utterly void, can be regarded as any consideration whatever for a promise by the creditor to extend the time of payment. And undoubtedly he may sue the next moment. And I am wholly unable to see how usury, paid down, can make the case any better. The contract for usury is equally void whether the money is actually paid or only promised to be paid at a future day. The statute has made no distinction; but on the contrary, has declared void *all* contracts infected with usury. Though the debtor parts with the money, it still belongs to him; and he may sue the next moment and recover it back. (1 *R. S.* 772, § 3.) This shows that there is no force in the suggestion, that although the creditor cannot legally receive, the debtor is not forbidden by law to give money at a usurious rate for the forbearance. Although the statute does not in terms say that the debtor shall not give what he pleases for the forbearance, it does so in legal effect; he is put into the same category with infants, femes covert, and persons *non compos mentis,*

and declared legally incompetent to make a bargain about money where more than seven per cent. is demanded. If he agrees to give more, the agreement is void : and though the agreement be executed by paying the money, it is still void, and the money may be re-called at pleasure. I think it impossible to maintain that either the promise or the payment of usury is a good consideration for a promise by the creditor to give time. It is no consideration at all. The creditor gets no benefit, and the debtor suffers no damage.

This question was not decided in *Miller* vs. *McCan*, (7 *Paige* 451,) for there is nothing to show that it was so much as thought of, either by Court or counsel. I believe the word usury is not even mentioned in the case.

After proceeding thus far, two cases in the Kentucky Court of Appeals, touching this question, have fallen under my observation. (*Tudor* vs. *Goodhue*, 1 *B. Monroe L. and Eq. Rep.* 322; *Kenningham* vs. *Bedford, id.* 325.) In the first of those cases it was held, that an agreement by the creditor to extend the time for payment, on a promise by the principal debtor to pay an usurious rate of interest for the forbearance, did not discharge the surety, for the reason that as the promise of the debtor to pay usury was void, there was no consideration for the promise of the creditor to forbear, and consequently no binding contract for time. To that doctrine I fully subscribe. But in the last case, the usury was paid at the time the creditor promised to forbear; and the Court held that the surety was discharged; that although the contract was void as to the debtor, it was valid as to the creditor; and if he should sue before the expiration of the stipulated forbearance, the other party might have an action for damages. It was likened to a contract between an adult and an infant, where the adult is bound, though the infant is not. Although this decision comes from a learned and highly respectable Court, it has failed to convince my understanding. I am still unable to see how payment of the usury can make the agreement any more binding than it would be on a promise to pay in future. If the Kentucky statute is like ours, it makes *all*

contracts for usury void, without any distinction between such as are executed in part, and such as are wholly executory ; and it makes the *contract* void, not *one side* of it only, but the *whole* contract, so that neither party is bound by it. If the debtor pays usury for further time, it either operates as a payment of so much money towards the original debt, or else the money may be recovered back at pleasure. And in either case, there is no sufficient consideration for a promise of any kind by the creditor. Payment, either in whole or in part, of a debt already due, cannot be a good consideration for a promise by the creditor ; for he gets nothing but his own. And if the money paid still belongs to the debtor, and may be recalled at pleasure, the creditor gets nothing at all ; and then it seems quite clear that there is no consideration to uphold his promise. The case put by the Court of a contract between an adult and an infant, is not entirely parallel ; for there, if the contract fails, it is because one party was not legally competent to make it, and not on account of any vice in the contract itself. But where there is usury, the contract is vicious : it is a thing forbidden by law. Again, very few contracts made by an infant are void ; for the most, they are only voidable ; and some of them cannot be avoided. But contracts infected with usury are absolutely void ; and they are all void, without exception.

If the usury laws are carried out into all their legitimate consequences when they operate against the creditor, as I think they should be, there is no good reason why they should not be carried to the same extent when they happen to operate in his favor. And as the statute does not declare the contract half good and half bad, but void, I think it altogether void. Neither party is bound, for there is no contract.

I am of opinion that the decree of the Court of Chancery should be affirmed.

GARDINER, J., said he concurred in the result of the opinion delivered by BRONSON, J., and also in the opinion upon all the points except that which holds that a surety is not a borrower within the provisions of the act of 1837.

JEWETT, C. J., delivered an opinion in favor of affirming the decree. So far as the bill sought relief on the ground of usury, he was of opinion that after a trial at law it was too late, under the circumstances, for the complainants to resort to a Court of Equity to impeach the judgment. The bill did not pretend that they were in any wise misled by the false statement of the payee of the note, that he had transferred it to Piercy the plaintiff, on the record in the action at law; and if they had verified their notice of the defence of usury according to the provisions of the act of 1837, they might have called the payee, as the plaintiff in interest, and examined him as a witness. The bill states that they expected to prove the usury by him on the trial, and it may therefore be presumed that the facts thus alleged, if true, might have been shewn, but for their own fault in omitting to take the necessary steps to entitle themselves to the proof. As to the second ground of relief, he was of opinion that the alleged agreements to forbear the payment of the note, in consideration of usurious premiums paid for such forbearance, were wholly void and therefore could not be set up by the sureties as a ground of discharge. It is conceded, he said, that an agreement to extend the time of payment, in consideration of an *executory* agreement to pay a usurious premium, is void, and does not suspend the remedy of the creditor against the principal debtor. But the distinction between that case and the case where the agreement is *executed* on the part of the debtor by the actual payment of the usurious premium, rests upon no solid foundation. In either case the statute declares the contract void, and the debtor can recover back the money so paid by action.

Upon these grounds he was in favor of affirming the decree of the Chancellor.

The other members of the Court concurred in the conclusion that the decree should be affirmed.

Decree affirmed.