## RILEY VS. GREGG.

Where A signs a note with B, in form as a principal maker, but in fact as his surety, which was known to the payee, an l after the note became due the maker entered into an agreement with B to wait on him for the debt until the follow ng March, in consideration that B would pay it at that time and $50 in addition, and the payee should have the use of B's horse in the meantime, which was delivered to and received by him, the surety is thereby released.

Where a party signs a note, in form as a principal maker, but in fact as a surety, which fact is known to the payee, parol evidence is admissible to show his real relations to the other contracting parties.

An usurious contract may be satisfied or repudiated by the injured party at his option, but the party who takes or contracts for usury, is precluded from setting it up to defeat any rights which the injured party or those in privity with him, may claim by virtue of the contract.

APPEAL from Circuit Court for *Milwaukee* County.

Action for a perpetual injunction to restrain the collection of a judgment, entered by warrant of attorney on a promissory note for $200, dated March 19, 1857, payable eight months af-

ter date to *Gregg* against the plaintiff *Hugh Riley* and one Goodman ; in favor of said *Gregg* the present defendant.

The complaint after setting out the entry of the judgment and the issuing of an execution thereon, and its levy on the property of the plaintiff, alleged that the defendant received the note on which the judgment was entered for a debt against Goodman,. the plaintiff not being indebted to the defendant, and that the plaintiff's name was on said note and warrant of attorney as a surety, as the defendant had notice, that *after* the maturity of the note and before the 1st of May, 1858, the principal debtor, Goodman, sold and delivered a horse to the defendant, in consideration of which, the defendant agreed with Goodman that the interest on said note to the 1st of November, 1858, and $25 in addition upon the principal should be discharged, and that the defendant would forbear and extend the time of payment of the note until Nov. 1, 1858, or about that date, and that the time of payment was so extended by the parties, to which the plaintiff never consented, and on or about the thirty-first day of December, 1857, the said Goodman proposed to the defendant that the defendant should extend the time of payment and forbear enforcing collection of the said note until the first day of April, 1858, or thereabouts in consideration whereof the said Goodman offered to let the defendant have a horse and use the same until the said first day of April or thereabouts; and further agreed to pay the amount of the said note and to pay also the said *Gregg* fifty dollars and take back the said horse, or to forfeit to the defendant said horse, to which the defendant assented and entered into an agreement to that effect, and in accordance therewith received said horse from said Goodman, and kept and used the same until after the expiration of the time to which the payment of the note was so extended, knowing the said *Riley's* name was on the said note only as surety as aforesaid, and without the assent or knowledge of said *Riley*.

The answer denied the alleged agreement for the extension

of the time of payment of the note, and denied that the defendant had any notice that the plaintiff signed it as a surety, and alleged that the note and warrant of attorney were brought to him signed by Goodman and the plaintiff, and that he received the same in good faith, supposing and believing that they were duly made and executed by them, and loaned the parties the amount of money specified in the note and delivered it to said Goodman, but admitted that in December, 1857 Goodman proposed to deliver the defendant a horse to keep and use until the following spring, and that in the spring he would pay up the note and pay $50 for waiting and take back the horse, or forfeit it, and that thereupon he received the horse, which afterwards died.

The note in question was set forth at length in the complaint, and there was nothing on the face of the note to indicate that the plaintiff signed it as a surety.    At the trial, the plaintiff testified that he did not present the note to the defendant, nor authorize any one to do it.    The deposition of Goodman was read in evidence on the part of the plaintiff, in which he testified among other things, as follows :    I informed *Gregg* that *Riley* had signed the note as surety for me, and *Gregg* so understood it when he advanced me the money on the note.    *Riley* never had any negotiation with *Gregg* about the matter to my knowledge ; I procured the loan myself from *Gregg* and on the terms proposed by him; the defendant *Gregg* knew the money was for me, and me alone, when he loaned it.    After the note became due, and before the first day of May, 1858, I sold the defendant, *Gregg*, a horse for the sum of $165, which sum he agreed to endorse as a payment on said note as follows :    to endorse the interest on said note as paid to the first day of November, 1858.    About the time the note became due, which was in November, 1857, I made an agreement with *Gregg*, to which he assented, to extend the time of payment to March 1st, 1858, and sometime in the month of March 1858, I sold *Gregg* the horse as above stated, and he agreed to

make the endorsements as I have before stated, and extend the time of payment on the balance until the first of November then next; the plaintiff, *Riley*, never knew anything of either of these agreements to extend the time of payment of said note, and they were made by me with *Gregg*, without the knowledge or consent of plaintiff, *Riley*; these were verbal agreements between myself and *Gregg*.

The plaintiff proved by two other witnesses that the defendant had stated to them that he had been to see Goodman about a month after the note became due to get his pay, and that Goodman could not pay him then, but if he would wait until the next March, Goodman would give him $50, and had given a horse for security, and would come to him in the March following and pay him all his money and $50 and get his horse back. Levi Halstead testified that the defendant told him of his visit to Goodman in December, 1857, and that he did not get any money; that he had made arrangements with Goodman to wait until fall, to extend the time of payment of the note, and I think mentioned the month of October, and that Goodman had given him a horse as a forfeiture if the note was not paid at that time, and he brought the horse home with him. In case the note was not paid the horse was to belong to *Gregg*; and if the note was paid he was to credit Goodman with the horse. Nothing was said as to the amount he was to credit Goodman for the horse, but he said he felt safe about the matter as he had *Riley's* name on the note as security.

On behalf of the defendant, it was proved that Goodman was and had been insolvent ever since the note became due. The defendant testified as follows: I let Mr. Goodman have $200 for the note. I went to see him after the note was due, to get my pay, and Goodman told me I could take the horse and keep him until March or April, and he would pay me all up and pay $50 for waiting. I did not say I would wait but I took the horse home with me. Goodman never came near me; I kept the horse till a year from the next June

when he was killed in a thunder storm.   I never told Goodman I would wait an hour in the collection of my demand; I have not received to this time any portion of the note or interest. The horse was considered to be worth $50 to $60 to the out side.   I never made any agreement with Goodman to extend the time till November, 1858, nor to any time; I never made with Goodman any such agreement as stated in his deposition. There was never a word said between us that there was to be a dollar endorsed on that note on account of the horse; Goodman was irresponsible.   I so considered him.

The circuit court rendered judgment granting the relief prayed for and the defendant appealed.

*J. E. Arnold,* for appellant.   1.   There is no qualification of the liability of either of the makers of the note expressed on its face, and if *Gregg* took it without any knowledge beyond the face of the note, he is protected against any relationship of surety between and Goodman *Riley,* and each is liable to him as maker, and parol evidence is inadmissible to vary the tenor of the note, or qualify the liability of *Riley* as a mere surety to the injury of *Gregg.*   2 Hare & W. notes, 317, 318, 319, 302; *Spring vs. Bank of Mt. Pleasant,* 10 Peters, 257; 14 Peters, 201; *Bank of Montgomery vs. Walker,* 9 S. & R. 229, Id. 382; *Murray vs. Judah,* 6 Cowen, 484; *Lewis vs. Hanchman,* 2 Barr. 416; *Bull vs. Allen,* 19 Conn. 101.   2. The respondent has failed to show by parol evidence that *Gregg* knew *Riley* was only a surety.   3.   Goodman was insolvent, and known to be so by both parties, when the note was given and *Riley* has suffered nothing from the indulgence granted. *Riley* neither offered to pay the note, nor attempted to compel *Gregg* to commence suit.   2 Hare & W. 269; *King vs. Baldwin,* 17 Johns., 384.   4. The agreement between *Gregg &* Goodman was at most, but an implied indulgence to Goodman revocable at the pleasure of *Gregg,* and did not release his surety.   2 Hare & W. 237, 305, 307, 311, 314; 2 Johns. Ch., 554; 17 Johns., 384.   5. The extension of time to the princi-

pal in consideration of the payment of interest, or part of the principal, or of a promise to pay future interest on the debt itself, will not release the surety, for these, both the principal and surety are bound to pay, and there is no new or sufficient consideration. 2 Hare and W. notes, 306, 307, 308; *Jenkins vs. Clark,* 7 Ohio 72; *Bailey vs. Adams,* 10 N. H. 162; *Wilson vs. Bank of New Orleans,* 9 Ala., 847. 6. The agreement was void for usury, and it makes no difference in such a case whether the usurious agreement be executory, or the usury is in fact paid. 2 Hare & W. notes, 309, 310, 317; *Vilas vs. Pusey,* 1 Comst., 274.

*Thomas M. Knox,* for respondent.

*By the Court,* DIXON, C. J. The court is of opinion that the judgment below should be affirmed, on the ground that the defendant by extending the time of payment of the note to Goodman, the principal, absolved the plaintiff from responsibility as surety. The agreement to extend is clear enough, for the defendant himself testifies to it, or to facts which are incapable of any other interpretation.

But it is objected that as the plaintiff executed the note in form as principal and not as surety, parol evidence is inadmissible to show his real relations to the other contracting parties, and that to allow it, is to vary the tenor of the note and change the plaintiff's liability from what it appears on the face of it. If this were so, it would constitute an insurmountable objection to the evidence. But we do not think such is its effect. We agree with the writers of the notes, 2 American leading cases, 312 to 315, sustained by *Bell vs. Banks,* 3 Scott's New Rep.; 503; *Harris vs. Brooks,* 21 Pick., 195; *Carpenter vs. Kings,* 9 Metcalf 511; *Bank of Steubenville vs. Hoge,* 6 Ham., 17; *Branch Bank vs. James,* 9 Ala., 949; and *Grafton Bank vs. Kent,* 4 N. H. 221; that the discharge of the surety by time given to the principal stands on the ground of fraud, arising from an injury to the subsidiary relations existing between the

parties, and does not involve the substitution of a different contract for that which has in terms been entered into with the creditor. It does not vary the effect of the undertaking, but it shows that the creditor who enters into a valid agreement to give time to the principal, knowing him to be such, and that the other joint maker is but a surety; violates his faith impliedly pledged to the surety not to interfere with his relations so as to impair his legal rights or diminish his remedies against the principal.·

It is also further objected, that the agreement giving time in this case was void for usury. It is a general principle running through all the decisions, that the penalties of the law against usury are aimed exclusively against the lender; that he alone is regarded as in the wrong, whilst the borrower is considered wholly innocent It follows hence, that. usurious agreements are not so absolutely void that no rights whatever can be founded upon them. They are void only at the option of the borrower and those in privity with him. Not being within the pale of the law, he may satisfy or repudiate at his pleasure. *Dix vs. Van Wyck*, 2 Hill 522; *Sands vs. Church*, 2 Seld., 347. But not so with the party taking the usury. Looked upon as the author of the wrong, he is precluded upon general principles of public policy, from setting it up to defeat any rights which the other party or those in legal privity with him, may claim by virtue of the contract. He stands in this respect, upon the same footing as the guilty party in case of fraud. The injured party may repudiate, but the guilty never. *LaFarge vs. Herter and Dillenback*, 5 Seld., 241; *Draper vs. Trescott*, 29 Barb., 401.

Judgment affirmed.