Hamilton vs. Prouty and another, imp.

HAMILTON vs. PROUTY and another, imp.

*December 3 — December 17, 1880.*

SURETYSHIP: EXTENSION OF PAYMENT.  *(1) What is a definite period.*
*(2) Extension for usurious premium prepaid.*

1. An agreement to extend the time of payment of a note past due, " for twenty or thirty days," is a good agreement to extend for a definite period of at least *twenty* days.
2. An agreement of the holder of a note past due, with the maker, to extend the time of payment for a definite period, in consideration of an *usurious premium* paid in advance, without the knowledge or acquiescence of the indorsers, discharges the latter.

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a promissory note.   The case is thus stated by Mr. Justice CASSODAY:

" January 19, 1877, the defendant Crossman executed the note in suit, dated on that day, wherein he promised to pay, one month after the date thereof, to the order of the respondents, *Prouty* and *Le Fevre*, at the appellant's office in Fond du Lac, $500, with interest at ten cent. per annum until paid; and the said *Prouty* and *Le Fevre* thereupon indorsed the same, and it was then, for value received, delivered to the plaintiff, *Hamilton*.   Not being paid at maturity, the note was duly protested for non-payment, and due notice thereof given to *Prouty* and *Le Fevre*.   Suit being brought by *Hamilton* on the note, *Prouty* and *Le Fevre*, by way of defense, alleged that after the note became due, *Hamilton*, for a valuable consideration paid to him by Crossman, extended the time of payment without the consent of *Prouty* or *Le Fevre;* and testimony was given by them upon the trial tending to prove that about the last of February, 1877, in consideration of from $15 to $25 paid to *Hamilton* by Crossman, the time of the payment of the note was extended twenty or thirty days; and that about the last of May, 1877, for another sum of money

paid to *Hamilton* by Crossman, another extension of fifteen or twenty days was obtained.

"At the close of the testimony, the counsel for the plaintiff asked the court to direct a verdict for the plaintiff upon the grounds — *First.* That no sufficient contract, within the meaning of the law applicable to a defense of this kind, had been proven with any certainty. *Second.* That as the note sued upon was bearing the highest legal rate of interest at the time of the supposed extension, and was past due, the *bonus* paid by Crossman for each extension was wholly usurious, and hence not such a consideration as would make a binding contract which would preclude *Prouty* and *Le Fevre* coming in and taking the necessary steps to secure themselves as against their principal. *Third.* That *Prouty* was present at the time the contract for extension was made by *Hamilton* and Crossman, and was a party to it.

"Each of these requests was denied by the court, and to each ruling the counsel for the plaintiff excepted. The verdict, under the charge of the court, was in favor of both respondents, and against the plaintiff for costs; and judgment was accordingly entered, from which the plaintiff appeals to this court. There was no motion to set aside the verdict, nor for a new trial, and no exceptions to the charge."

For the appellant there was a brief by *Coleman & Spence,* and oral argument by *Mr. Spence.*

For the respondent there was a brief by *Charles W. Felker,* and oral argument by *W. B. Felker.*

CASSODAY, J. The question whether the agreement between *Hamilton* and Crossman for the extension was with the knowledge and acquiescence of *Prouty,* was one of fact for the jury. *Prouty* testified that it was not, and the jury found with him, and that must be regarded as conclusive.

The testimony shows that the first agreement for an extension made by *Hamilton* and Crossman was for twenty or

thirty days; and it is urged that this was too indefinite to operate as a discharge of the indorsers. We are of the opinion, however, that the period must be regarded as definite for at least twenty days, and there are good authorities for holding the period to be sufficiently long to discharge the indorsers, if the consideration was such as to make the agreement binding. Brandt on Suretyship and Guaranty, § 298, and cases there cited.

Was the consideration such in this case? Section 1689, R. S., which was substantially the law at the time of the transaction in question, provides that "no person . . . shall directly or indirectly take or receive . . . any greater sum or any greater value for the loan or forbearance of money, goods or things in action, than at the rate of $10 upon $100 for one year." Section 1691, R. S., which was in force at the time, provides that "every person who, for any such loan or forbearance, shall have paid or delivered any greater sum or value than is above allowed to be received, may, by himself or his personal representative, recover, in an action against the person who shall have taken or received the same, or his personal representative, treble the amount of the money so paid or value delivered above the rate aforesaid, if such action shall be brought within one year after such payment or delivery." Here the note, by its terms, was drawing the highest legal rate of interest, and hence there can be no doubt that the money paid by Crossman to *Hamilton* in February, for twenty days' further "forbearance," was a *bonus* in excess of the highest rate of interest allowed by law, and therefore was wholly usurious. *Meiswinkle v. Jung*, 30 Wis., 361. The taking or receiving of it was not only declared illegal, but was made punishable by creating a liability for three times the amount, if the suit therefor had been brought within the year. Was the usurious *bonus* so taken a sufficient consideration to bind *Hamilton*, so that he could not maintain a suit on the note until after the twenty days' extension had expired? This is the precise question to be determined.

In *Meiswinkle v. Jung* it was held that, while the usurious agreement for an extension was executory as to both parties, it was void as to both, and did not discharge a surety on the note. But the question here presented did not there arise, because, as stated by DIXON, C. J., in the opinion, the jury must have found that the $50 was not paid. It is true, the opinion contains this sentence: "In the view which we are inclined to take of the law, that the usurious agreement was, at all events, utterly void, whether the $50 was paid or not, and that so the engagement, whatever it may have been, to extend the time of payment, was *nudum pactum* and void for want of consideration, all," etc. But this language, inspired, doubtless, by a fresh reading of the vigorous opinion of BRONSON, J., in *Vilas v. Jones*, 1 N. Y., 286, therein referred to, was fully explained by Judge DIXON himself in a subsequent note to *Riley v. Gregg*, 16 Wis., 666, and found in Vilas & Bryant's edition, pp. 697, 704–5, where, among other things, it is stated "that the question whether the lender, of his own mere motion, shall be permitted to repudiate or assert the invalidity of an *executed* agreement, must still be regarded as 'an open one." So the language of the late able Chief Justice RYAN, in *Austin v. Burgess*, 36 Wis., 186, 192, must be regarded as applicable to the facts in that case; for there, too, the agreement was merely executory. The question presented, therefore, though several times incidentally considered, has never before been decided by this court. There is much conflict in the decisions of the different states, and frequently in the same state. It would be unprofitable to trace the comparisons or compare the merits and demerits of the two different lines of reasoning. The one seems to begin where the other ends. The one declares the contract void, and insists that it is so for all purposes and as to all parties; the other admits that the contract is void, but insists that the statute was enacted to protect the weak or necessitous borrower against the avaricious lender, and hence is a weapon to be wielded in defense of the party

whom it was designed to protect, and not for the benefit of the party whom it was designed to punish. In the language of Sir William GRANT, Master of the Rolls: "The party in whose favor an usurious contract has been executed, cannot make use of it for any purpose whatsoever." *Barnard v. Young*, 17 Ves., 44, 46.

In the confusion of authorities upon this point, it is not so important that our decision shall be supported by the greatest number of adjudged cases, as it is to have it most in harmony with the spirit and reasoning of the decisions of this court, and the purpose of our statute.

In *Wood v. Lake*, 13 Wis., 96, DIXON, C. J., said: "Both parties are not understood to be *in pari delicto;*" and again: "The penalties of the law are all aimed at the lender, and none at the borrower."

In *Riley v. Gregg*, 16 Wis., 666, the usurious agreement to forbear was in part executed by the payee taking and using the horse, and it was held that the surety was thereby released.

In *Fay v. Lovejoy*, 20 Wis., 405, DIXON, C. J., said: "All the authorities agree that when interest money has been paid and applied as such with the consent of the borrower, only the illegal excess can be recovered back." In *Bensley v. Homier*, 42 Wis., 631, RYAN, C. J., said: "Usury is *malum prohibitum*, not *malum in se*. . . . A borrower and a lender cannot properly be said to deal together on equal terms. The necessity of one, and the power of the other to relieve it, give an advantage to the lender over the borrower. This may be so abused as to become an undue advantage. And experience has shown that the wants of borrowers and the greed of lenders are the frequent occasion of grievous oppression. Hence arose statutes against usury. And, whatever be their form, their general policy is to protect the borrower against the oppressive exaction of the lender. . . . It is difficult to perceive why the defense given by the statute to the borrower for his protection against oppression, and which he may waive at his pleas-

ure, should be extended to any one but himself and his representatives."

In *Ready v. Huebner*, 46 Wis., 692, the opinion was written by our present chief justice, and it was directly held that "the defense of usury is personal to the debtor, his privies in blood or estate, or privies to the contract."

We are clearly of the opinion that the defense of usury is so far personal to the borrower and those in privity with him, that *Hamilton* in this case, after having received the usurious premium, could not the next day, by alleging his own usurious agreement and the benefits he had received by virtue of it, have maintained an action upon this note against Crossman and the sureties. In the language of READE, J., in *Scott v. Harris*, 76 N. C., 205, 207, 208: "It was not for the creditor to say that the contract was usurious. His conscience takes fright at a danger which may never approach him. The debtor may plead usury or not at his pleasure, and, unless and until he does so, the note which was given for the usury is valid, and a part of it has already been paid in goods. The contract was sufficient to prevent the sureties from paying the debt and suing the principal; and that is the wrong of which they have the right to complain." If, then, *Hamilton's* hands were tied by receiving the usurious premiums until after the period of the extension had expired, there would seem to be no escape from the conclusion that the indorsers were thereby discharged. We also cite the following cases: *Myers v. Bank*, 78 Ill., 257; *Wittmer v. Ellison*, 72 Ill., 301; *Austin v. Dorwin*, 21 Vt., 38; *Turrill v. Boynton*, 23 Vt., 142; *Bank v. Woodward*, 5 N. H., 99; *Cox v. Railroad Co.*, 44 Ala., 611; *Kenningham v. Bedford*, 1 B. Mon., 325; *Armistead v. Ward*, 2 Patton & Heath, 504.

We therefore hold, (1) that an agreement for an extension of the time of payment of a note past due for twenty or thirty days, is for a definite period of at least twenty days; (2) that an agreement by the holder of a note past due, with the maker,

for an extension of the time of payment for a definite period, in consideration of an usurious premium paid in advance, without the knowledge or acquiescence of the indorsers, discharges the latter.

*By the Court.*— That portion of the judgment of the circuit court appealed from, is affirmed.