RICHARD C. FABER, as Receiver for the ASTORIA MERCANTILE CORPORATION, Plaintiff, *v.* DAVID SIEGEL, SAM JACAVSKY and " JACK " STAMM, First Name Fictitious, etc., Defendants.

Municipal Court of New York, Borough of Queens, Fourth District, March 11, 1936.

*Renander, Miller, Bernard & Pigott* [*Harry Green* of counsel], for the plaintiff.

*Henry Solow,* for the defendant Sam Jacavsky (only defendant served).

PETTE, J. The issues in this action were submitted to the court upon an agreed state of facts. The Astoria Mercantile Corporation, incorporated under the Business Corporations Law of the State of New York, made a loan of $1,000 to one David Siegel, a stockholder therein, which was secured by a demand promissory note, bearing the indorsement of three people, one of whom was Sam Jacavsky, a defendant herein. The corporation retained sixty dollars, the interest in advance on said loan, and David Siegel received the sum of $940 at the time of the execution and delivery of the note. The note was to be repaid at the rate of twenty dollars per week, although the entire amount was due on demand. The Astoria Mercantile Corporation was enjoined from continuing business, and Richard C. Faber, Esq., was appointed receiver. This action was instituted by said receiver to recover the sum of $105 and interest, the balance due and owing upon said note. The only real issue presented by the pleadings and the stipulated facts is that raised by the defendant in the alleged defense of usury.

An analysis of the facts herein show that the defendant Sam Jacavsky was an accommodation indorser of the note in question. The moneys were borrowed by David Siegel for his use. There is no proof, nor is it pleaded, that any part of said loan was paid or given for the use of the defendant Jacavsky.

On these facts, the defendant Jacavsky was but a mere surety. He received no part of the money advanced; it was not advanced for his benefit; he did not negotiate the note, or pay or agree to pay any usury. He did no act toward procuring the loan, except to indorse the note.

Under these circumstances, defendant Jacavsky cannot be held to be the " borrower;" at the most, he was only surety for the borrower, David Siegel. Consequently, he *is not entitled* to avail himself of the alleged defense of usury, if any.

The courts have given a strict construction to the word " borrower " as used in section 377 of the General Business Law, and have held that it designates only the party who is bound by the original contract to pay the loan.

A review of some early decisions in this State seems to bear out the opinion of this court in such cases.

A similar set of facts were presented in *Vilas* v. *Jones* (1 N. Y. 274, 278, 279) wherein BRONSON, J., held:

" Let us now see what the Legislature has done. It has set aside the rule of equity which has been mentioned, in favor of the ' borrower ' of the money, but not in favor of anyone else (1 R. S. 772, § 8; Stat. 1837, p. 487, § 4). * * * The word ' borrower ' is again used near the close of the section, without anything to enlarge its ordinary signification. There is, I think, no established rule of interpretation which will so enlarge this provision as to make it include the sureties of the borrower. It cannot be carried so far without indulging a latitude of construction which would amount to a new enactment. * * *

" The agreement to borrow, and the security for the loan, are two things, and the borrower and his surety are two persons. The Legislature has given a new and peculiar remedy to one, and *only one*, of those two persons; and I see no principle upon which the courts can so extend the enactment as to make it include both. It is quite possible that the Legislature, in its zeal to regulate this branch of trade, and make money cheap when it is scarce, as well as when it is plenty, would have given this new remedy to the surety as well as the borrower, if the thing had been thought of. But if it is a *casus omissus* in the statute, it is for the Legislature, and not the courts, to supply the defect (*Jones* v. *Smart*, 1 T. R. 52). * * * in my judgment there is no solid ground for saying, that the word ' borrower ' includes one who did not borrow, and who had no other connection with the transaction than that of becoming a surety for the man who did borrow. * * *

" *If the statute is remedial, it is also penal. It not only creates a forfeiture of the debt, but it punishes the lender as a criminal. The very section under consideration was made for the purpose of bringing about a forfeiture of the money actually loaned. All the books agree that penal statutes are to be construed strictly; and I am not aware of any principle upon which such a usury law as we have can be made an exception to the general rule.*"

In *Allerton* v. *Belden* (49 N. Y. 373, 375) the Court of Appeals ruled:

" The facts alleged in the complaint show that the plaintiff was an accommodation indorser of the note in question. * * *

" We think that the plaintiff can not under these circumstances be held to be the borrower, but that he was only surety for the borrower, and consequently he is not entitled to avail himself of the provisions of the revised statutes (1 R. S. 772, § 8) as modified by the act of 1837, which dispense with an offer to pay interest or principal where *the borrower* seeks relief in equity against a usurious security. It may be difficult to assign any good reason why the

Legislature should not have extended to a surety, in such a case, the same privilege which they have afforded to the principal debtor, but as they have in terms confined the benefits of the provision to the borrower, we can not remedy this supposed defect, by giving to the word ' borrower ' a construction of which it is not justly susceptible. * * *

" In the present case the plaintiff was merely an indorser and did not make the agreement for the usurious discount."

In *Buckingham* v. *Corning* (91 N. Y. 525, 530) ANDREWS, J., held: " The act conferred a special and peculiar privilege upon the actual borrower. It permitted him, without conforming to the general and established principle of equity, to keep the money borrowed, and at the same time compel the cancellation of the usurious security. The statute proceeded doubtless in part upon the policy of discouraging usury, but also upon the theory that the borrower was the victim of the usurer. *But the privilege is personal purely.* The borrower is not bound to avail himself of it, and it may be very inequitable for him to do so."

In *Hatch* v. *Baker* (139 Misc. 717) the court ruled: " The defense of usury is personal to the borrower or those in privity with him. The contractors of the debt could of course attack the transaction. They have not done so. * * *

" The law is well settled in this State that the purchaser who takes a conveyance of the premises from the mortgagor, subject to the lien and payment of a mortgage, can not set up the defense of usury against such mortgage and thus obtain an interest in the land which the mortgagor never agreed or intended to transfer to him (*Sands* v. *Church*, 6 N. Y. 347; *Hartley* v. *Harrison*, 24 id. 170; *Matter of Oakes*, 248 id. 280; *Morrill Realty Corp.* v. *Rayon Holding Corp.*, 254 id. 268).

" The statute against usury is designed to give protection to the *borrower* against the greed of the lender, and not to afford to a mere adventurer who may step into the shoes of the borrower a right to speculate on a violation of law which does him no harm and causes him no loss. * * * *The corporate defendant and the subsequent mortgagees are not borrowers within the meaning of the statute. The defense of usury is not open to them.*"

In *Halsey* v. *Winant* (258 N. Y. 512, 528) the Court of Appeals reviewed the early cases construing the word " borrower." It held:

" The courts have given a strict construction to the word ' borrower ' * * * (p. 530).

" In *Post* v. *Bank of Utica* (7 Hill, 391, *supra*) it was distinctly held that the purpose of the statute was to protect the borrower

and that the borrower's right is personal to him and cannot be asserted by a stranger to the transaction; that the law was made to prevent oppression and to rescue the party oppressed.   *   *   * (p. 531).

"A note in 17 A. L. R. (pp. 130 and 131), referring to the New York rule, states that the courts have given the word ' borrower,' as used in this State, a strict construction and have held that any person other than the party bound by the original contract to pay the loan, is obliged to tender the principal of the debt and legal interest thereon as a condition of equitable relief against a usurious loan, and cites authorities showing the application of the principle to a subsequent mortgagee; to the original mortgagor, having lost the status as borrower by selling the equity of redemption; a surety of the principal debtor; assignee in bankruptcy of the borrower; heir or devisee of the borrower; grantee of a mortgagor; subsequent lienor; assignee for creditors, and trustee in bankruptcy.

" In *Hubbard* v. *Tod* (171 U. S. 474) a situation somewhat similar to that involved in the instant case was presented.   *   *   *   The opinion refers to the New York statute and states that the act has been rigidly confined to the borrower himself, citing: *Wheelock* v. *Lee* (64 N. Y. 242); *Buckingham* v. *Corning* (91 N. Y. 525); *Allerton* v. *Belden* (49 N. Y. 373)."

It follows that plaintiff is entitled to judgment for the amount sued for, $105, together with interest as demanded.