Jacob Levy, a resident of Fayetteville, in this State, in April, 1819, procured the plaintiff, a commission merchant in New York, with whom he was in habits of business, to accept his bill of exchange for $5,000, payable to one Clark, whose endorsement, as well as the plaintiff's acceptance, was for the accommodation of Levy. There was no (206) communication between the plaintiff and Clark respecting their liabilities for Levy. Clark knew that the plaintiff's acceptance was for Levy's accommodation; and Levy informed him that he should consign to the plaintiff produce to meet the bill. The bill was discounted at the Bank of Cape Fear, for the accommodation of Levy. When it was drawn, Levy executed a bond to Clark in the penalty of $15,000, with a condition to be void in case Levy should indemnify him against loss by means of any endorsements or suretyships. To secure this bond, Levy, on the same day, executed a mortgage upon his property in the town of Fayetteville, which deed was not recorded until August, 1822.
In July, 1819, another bill was drawn, similar to the first, and in renewal of it, when Levy executed another bond to Clark, with a condition to be void in case Levy should indemnify him against all liabilities which Clark had then or might thereafter incur for his accommodation. To secure this bond, Levy executed, on the same day, a mortgage on his property in Wilmington, which mortgage never has been recorded.
In November, 1819, Levy being largely indebted to the Bank of Cape Fear, the State Bank, and the Bank of the United States, by promissory notes, to which the defendant Lazarus, Clark, and several others, were sureties, made a general assignment of his estate, including the property mortgaged to Clark by the two deeds of April and July of that year to Lazarus and one McRae, for the indemnity of his endorsers and sureties, pari passu. Lazarus and McRae, at the time of the assignment, had notice of the two mortgages to Clark, and the last clause of the assignment was as follows: "And whereas John Clark, Esq., hath a lien upon part of the property herein conveyed, for his endorsement made for the said Jacob Levy, it is further understood, agreed, covenanted, and *Page 121 
granted, and the trustees aforementioned are hereby directed, (207) in order to extinguish said claim, first fully to pay and satisfy, out of the proceeds of the sale or sales aforesaid, so much of the debt of the said Jacob Levy, in the banks aforesaid, as may be endorsed by the said John Clark."
The acceptance by the plaintiff of Levy's draft in favor of Clark was renewed by redrawings until February, 1820, when it was protested, and the holder, the Bank of Cape Fear, then received from Levy, the plaintiff, and Clark their joint and several promissory notes for $5,200, to secure the principal, and damages on it. Levy and Clark becoming insolvent, suit was brought upon this note against the plaintiff, in New York, where it was finally recovered of him, under a decree of the court of chancery, by which the holders were directed to assign to the plaintiff all the interest which they had in the trust fund created by the deed of November, 1819, to Lazarus and McRae, so far as it extended to the note of $5,200. An assignment was executed according to this decree by the Bank of Cape Fear, in June, 1824; and in January, 1825, Clark also assigned to the plaintiff all the right which he had to the two mortgages made to him by Levy, and also all his right under the assignment made to Lazarus and McRae, so far as the latter extended to indemnify him against his endorsement of the bill upon the plaintiff or his suretyship for the note of $5,200.
The Bank of the United States, the State Bank, and the Bank of Cape Fear, together with Levy, Clark, Lazarus, McRae, and all the sureties of Levy interested in the assignment, were made defendants.
The plaintiff insisted that he was, both by the rules of a court of equity and by the assignments of the Bank of Cape Fear and of Clark, entitled to the benefit of the two mortgages made to Clark; that it was the object and intention of Levy, in his assignment of November, 1819, to preserve this right to the plaintiff as well as to Clark, and that if it was not preserved and secured by the assignment, it was by (208) reason of a mistake. The bill prayed that any mistakes or omissions might be corrected; that the plaintiff might be decreed to stand in the place of Clark and the Bank of Cape Fear in respect to their claim upon the trust fund, on account of the debt which he had paid, and for the account of that fund and payment of the money he had paid as surety for Levy.
The cause was argued at the last term, and held by the Court under advisement until the present.
Levy and Clark stand bound in equal degree to the bank, that Gomez should accept and pay the bill of the former. The discount, being solely for the benefit of Levy, as between him and Clark, he was the principal debtor. Gomez, by his acceptance, became a principal debtor as to Clark and the bank; but his acceptance being for the accommodation of Levy, as between Levy and himself he was only a surety. These facts were all known to Clark at the time of his endorsement, with the further information that Gomez accepted, or would accept, in confidence that Levy would consign property to him before the maturity of the bill, to meet the acceptance; and that he, Gomez, transacted business as a commission merchant in New York, to whom Levy was in the habit of making large consignments. By a bond and mortgage, a fund is provided for the indemnity of Clark, at the time of his endorsement. The whole of Levy's property is afterwards bona fide, and upon full consideration, conveyed to Lazarus and McRae, with notice of the mortgage to Clark. The mortgage has not been registered. In the deed to Lazarus and McRae there is this clause: "And whereas John Clark hath a lien on part of the property herein conveyed, for his (218) endorsement made for the said Jacob Levy, it is further understood, agreed, covenanted, and granted, and the said trustees are hereby directed, in order to extinguish said claim, first fully to pay and satisfy, out of the proceeds of the sale or sales aforesaid, so much of the debt of the said Jacob with the banks aforesaid (meaning, among others, the Bank of Cape Fear) as may be endorsed by the said John Clark." After one or more redrawings by Levy on Gomez, endorsed by Clark, and after the execution of the deed from Levy to Lazarus and McRae, Levy, with Gomez and Clark as his sureties, gave a joint note to the Bank of Cape Fear, the holder of the bill, or, which is the same thing, a similar one drawn in renewal of it, including interest and damages. Levy and Clark being insolvent, Gomez has paid the whole of this note. In the mortgage to Clark the mortgaged property is declared to be liable to any future or other endorsement which Clark may make for Levy, and for any endorsement which he may make for their renewals, according to the practice of banks. Gomez, by this bill, seeks the benefit of the fund created for Clark's indemnity, and has obtained an assignment from him, and also one from the Bank of Cape Fear, of all their interest in the trust premises for and on account of the bill or note above mentioned.
There is no agreement made between Clark and Gomez to change the order of their liability, appearing upon the face of the transaction. Upon it Gomez stands prior in obligation to Clark, for Clark's liability was to arise only upon his default. Standing in this relation, he cannot *Page 123 
call upon Clark to contribute as a cosurety. In order the better to understand the claim of Gomez to the fund provided for the indemnity of Clark, we will consider it as created by a stranger, and not by Levy, the principal debtor. Gomez could not reach it on the ground of equality between Clark and himself, for he stands, as we have seen, prior in obligation to Clark. Neither can he claim this (219) fund upon being subrogated to the rights of the creditor, the Bank of Cape Fear; for the bank, upon receiving payment from him, is bound to assign all its obligations and facilities for enforcing payment from those who stand prior and equal in obligation to him, not from those who stand posterior to him; and, I would say, not from those who stand in equal or prior degree, unless the fund came from the principal debtor; for I think, in that case, it is purely personal, and cannot be communicated. But as this fund came from Levy, the principal debtor, it is very justly thought to be more accessible to his sureties, and if it still remained the property of the principal debtor, this Court would lend its aid to reach it, and would remove all obstructions out of the way, and place it within the power of the suffering surety. I am almost prepared to say that where the principal debtor creates a fund for the indemnity of a primary surety, one not a bare certificator, as he is called in the civil law (such I think Clark to be), any surety who stands in equal or posterior degree may pursue the fund in the hands of any person who comes to it with notice; for the principal debtor is bound to provide equally for all his sureties — with him there is no prior or posterior; and when he communicates a benefit to one, his relationship makes it common to all standing in equal degree.Commune periculum, una salus.
The cosurety who attempts, at the time or after the obligation is created, privately to provide for himself from the funds of the common principal, acts contrary to good faith, as he thereby diminishes the funds on which they all rely for their common safety. And, besides, it would tend to weaken his exertions to the end in which all have an interest. But to extend this to a prior against a posterior surety is connecting together those whose situations are different, and inferring similar rights from dissimilar obligations. It is restricting too much that right of self-preference or self-security which all human laws permit, if (220) we do not infringe upon those of others; and it is not considered an infringement of them to procure for ourselves a satisfaction or security for our debts, although we may leave our debtor without the means of satisfying his other creditors, whose debts may be as meritorious as our own. Subjecting this fund (I speak of it as provided for Clark's indemnity, and not for the payment of the debt, which I shall notice presently) to the claim of Gomez would be saying, in effect, that *Page 124 
the bare act of becoming surety creates a lien in behalf of the surety, upon the property of the principal debtor. It cannot be reached through the medium of Clark, for it was to be used by him only in the reverse of the facts which have happened, to wit, the failure of Gomez to pay, whereby Clark's guarantee to the bank would be violated. Nor can it be reached through the medium of the bank, for similar reasons. The bank could not call on Clark, and consequently could not call for the fund provided for him, but in the like event, the failure of Gomez. The fund, therefore, remained the property of Levy, and subject to be transferred to any person — liable, however, in the hands of an assignee, to indemnify Clark, or any person who had recourse against him, for any damage which they might sustain from the default of Gomez. I have viewed this case as it stood to the fund when the trust deed was executed to Lazarus and McRae. After which Levy's dominion over the property entirely ceased, and with it the efficacy of that part of the original mortgage to Clark to secure him against future endorsements; for it rested in agreement, and grew out of his dominion over his property. The loss of dominion did not affect endorsements made afterwards, for prior debts. Considering this, therefore, as a fund set apart for the indemnity of Clark, Gomez can have no claim to it.
(221) But it is said that it is set apart not only for the indemnity of Clark, but that it is specifically appropriated to the payment of this debt. If so, most certainly he who pays the debt has, in this Court, a right to be reimbursed out of the fund; for the principal debtor substituted it for himself, and he who can claim remuneration from him can claim it from the fund. They are, as it were, identified. But after much reflection, and some doubts upon the subject, I think that the fund was provided and set apart for the indemnity of Clark only, and not for the payment of the debt, otherwise than as a means of saving Clark harmless from his endorsement, because from the recitals in the deed providing it, it appears that it is substituted for the unregistered mortgage and bond to Clark, which provided for his personal indemnity only, and not for the payment of the debt. And the words "extinguish such claim," and "fully to pay so much of the debt of said Jacob Levy with said banks as may be endorsed by the said Clark," must be understood as directed in reference to that object, to wit, the payment of that debt, should Clark be compelled to pay it, and not simply the payment of the debt, without regard to that object. This construction is much strengthened from the fact that personal indemnity, and not the payment of the debts generally of Levy, was the object of the deed. From the operation of it, it is therefore fair to strike out (or rather not to include within it) such debts as the person intended to be secured should not be compelled *Page 125 
to pay. As to the ground that it was intended to protect Gomez as well as Clark, and that it was left out of the deed by inadvertence or mistake, the evidence does not support the charge. It does not appear that the parties intended anything but what they have done.