## THE NATIONAL BANK OF DERBY LINE

*vs.*

### FRED N. Dow and others.

Cumberland.    Opinion March 8, 1887.

*Promissory notes.   Indorsers.   Extension to maker.*

The maker of an over-due note, on which the defendants are accommodation indorsers, applied to the plaintiffs for a renewal.   Plaintiffs refused to renew,. writing the maker January 27, 1885, that they prefer to hold the note, but· would carry it thirty to sixty days, "as it is, if nothing materially transpires to change the status of the security and the names;" upon the condition that the maker remit at once interest on the note to January 15, 1885.   The· maker remitted three months interest at seven per cent per annum, the legal rate being six per cent, writing that he sent the interest at the rate of seven: per cent, "which you ask," It was the maker's inference from previous transactions that the plaintiffs asked seven per cent interest.   The plaintiffs retained the money, indorsing three months interest on the note, not naming the amount indorsed.   At six per cent there was more due for interest on the· note than the amount sent, and the law of Vermont, which governs the· transaction, applies all excess above six per cent interest on the contract on which it is received.

*Held*, that the transaction was not a contract to extend the note, such as will. discharge the defendants from their liability as indorsers.

ON exceptions from the superior court.

Assumpsit against Fred N. Dow, Ossian Ray and Charles E.. Benton, on the following promissory note.

"$7,000.                         Lancaster, N. ·H. Oct. 12, 1883.

"One year after date I promise to pay to the order of myself seven thousand dollars, at the National Bank of Derby Line, Vt.

"Value received.                $416.50

$6,583.50

Jacob Benton."

"No. 3286.   Due Oct. 12-15.

(Indorsed on back.)

"Pay to the order of Charles E. Benton, Ossian Ray and Fred
"N. Dow, jointly.           Jacob Benton.

                           Charles E. Benton.

                           Ossian Ray.

                           Fred N. Dow."

"Rec'd Sept. 30, 1884.   One hundred and forty-one and 30-
100 dollars by O. Ray, $141.30.

"Rec'd Jan'y 31, 1885.   Int. to Jan'y 15, 1885."

Duly protested.

*Ardon W. Coombs,* for the plaintiff, cited: Story, Prom.
Notes § 419, note 2; *Williams* v. *Smith,* 48 Maine, 138; *Berry*
*v. Pullen,* 69 Maine, 103; *Mariners' Bank* v. *Abbott,* 28
Maine, 280; *Page* v. *Webster,* 15 Maine, 249; *Bank* v. *Rollins,*
13 Maine, 207; *Bank* v. *Ives,* 17 Wend. 501; *Creath's Adm'r*
*v. Sims,* 5 How. 207; *Potter* v. *Green,* 6 Allen, 444; *Reynolds*
*v. Ward,* 5 Wend. 501; *McLemore* v. *Powell,* 12 Wheat. 554;
*Halstead* v. *Brown,* 17 Ind. 202; *Oxford Bank* v. *Lewis,* 8
Pick. 457; *Blackstone Bank* v. *Hill,* 10 Pick. 132; *Whitney*
*v. So. Paris Mf'g. Co.* 39 Maine, 316; *Nightingale* v.
*Meginnis,* 34 N. J. (5 Vroom,) 461; *Bank* v. *Parsons,* 138
Mass. 53; *Norris* v. *Crumney,* 2 Rand. 328; *Sohier* v. *Loring,*
6 Cush. 538; *Hutchins* v. *Nichols,* 10 Cush. 300; *Morse* v.
*Huntington,* 40 Vt. 488; *Bank* v. *Goss,* 31 Vt. 315; *Dixon* v.
*Dixon,* 31 Vt. 450.

*Clarence Hale,* for the defendant.

It cannot be that the bank intended to say, "we will extend
provided the extension is illegal and inoperative and of no effect
upon the parties to the note;" the bank very well knew the
law; as every one is presumed to know it. It understood that
such extension without the consent of the indorsers would
operate as a discharge; and that if it chose to make such
extension without the consent of the indorsers it took its chances
of being able to recover from the indorsers. It is clear that the
word "transpires" refers to some future event or fact which
should effect the financial standing of those whose names were

on the note ; the word " transpires" being used in its popular, although incorrect significance. The letter does not say "provided nothing in this shall be construed to affect our rights on the indorsers," but it refers to an event to " transpire." It cannot be argued that anything has actually " transpired" to affect such credit or financial standing ; the bank waited the thirty days and even more than sixty days. It cannot be reasonably argued that the language of the letter reserved the rights of the bank against the indorser. The language cannot be construed into an agreement to reserve rights, such as is shown in the following cases where the court held that a discharge was not effected. *Potter* v. *Green*, 6 Allen, 442 ; *Hutchins* v. *Nichols*, 10 Cushing, 299 ; *Sohier* v. *Loring*, 6 Cushing, 537.

The law expressly declares that if any reservation of rights against the sureties is made it must be in "clear and unambiguous terms." *Boultbee* v. *Stubbs*, 18 Ves. 20 ; *Rees* v. *Berrington*, Leading Cas. in Eq. p. 717.

The bank should not be excused from the legal consequences of the extension they suggested and granted. When the bank officers took the responsibility of enlarging the time of payment they altered the contract ; they changed the liability of the surety ; and that surety has a right to say that this is not the contract into which he entered. *Greely* v. *Dow*, 2 Met. 178. Byles on Bills, 55, § § 247, 250, 253, and notes and cases cited.

The promise to extend was based upon a legal consideration. That consideration consisted in the usurious interest paid. The interest due up to Jan. 15, 1885, was about $102, and that sum is acknowledged by the indorsement of interest on the back of the note ; but at least $17 more was paid. That overplus is clearly a legal consideration for the extension of time. There can be no doubt but that the actual payment of usurious interest, as in this case, constitutes a consideration. This is assumed in *Berry* v. *Pullen*, 69 Maine, 101, and shown in cases therein cited ; of course an executory contract to pay such interest would not be a consideration ; but in this case the interest was actually paid, but was not endorsed on the note ; only the legal " interest to Jan. 15, 1885," appears on the back of the note. It is no

answer to say that the $17 may be recovered back under the laws of Vermont and that it has been tendered back in this suit.

It may be argued in behalf of the plaintiff bank that the recent case *Haydenville Bank* v. *Parson*, 138 Mass. page 53, is a case of import in their favor; and it is true that the court has gone as far in that case as it has ever gone in that direction. But it must be remembered that the usury law of Vermont is entirely different from the interest law of Massachusetts, any rate being allowed in Massachusetts if expressed in the contract, whereas in Vermont any sum over six per cent may be recovered back. The case at bar shows the payment of money not due; and such payment is clearly a benefit to the creditor and an inconvenience to the debtor; and in both respects is a good consideration for a promise. *Greely* v. *Dow, supra*; *Rees* ·v. *Berrington, supra.* De Golyar on Guarantees, p. 407, *et seq.*, and cases cited. Story on Prom. Notes, § § 413-421, and cases cited.

The subject of usury as a consideration for an extension of time is fully considered in *Vary* v. *Norton* by the U. S. C. C., Michigan, 6 Federal Reporter, 808; this decision fully appears in Myer's Federal Decisions, vol. 3, page 614, § 552. See also *Turrill* v. *Boynton*, 23 Vt. 142; *Burgess* v. *Dewey*, 33 Vt. 619; see also *Gardiner* v. *Gardiner*, (23 S. C.) 25 Am. L. Reg. 412.

PETERS, C. J. The defendant, an accommodation indorser of a note, contends that he is released from liability by an agreement between the maker and holder to extend the time of payment of the note without his assent.

The principle involved in such a defense, while clearly logical, is subtle and refined, so much so that persons unlearned in the law rarely suspect the legal consequences that may follow their giving time for the payment of over-due notes. It is the unseen, sunken rock on which thousands of commercial obligations have been wrecked, to the utter dismay of the losers and sometimes to their ruin. While the situation of a surety must be carefully scrutinized, so should that of a holder be, who is to lose, if he loses at all, about seven thousand dollars for unwittingly

receiving the merest pittance of consideration for extending a note.

Applying to the present case the definition of liability as declared by VIRGIN, J. in *Berry* v. *Pullen*, 69 Maine, 101, we are convinced that the facts, affected as they are by the finding of the judge, fail to prove any contract of extension which can release this indorser from liability on the note. It is in that case said : "But before a surety, whose name was deliberately and understandingly placed upon a note to give it credit, can be thus absolved from liability, the law, as well as justice and equity, requires that there shall be a valid, binding contract — one founded on a sufficient consideration, and the effect of which shall be to give further definite time to the principle, without the consent of the surety." We think this plaintiff has escaped from the risk of any such contract; the facts fall short of it.

The maker of the note in a letter dated January 24, 1885, offers to renew his then over-due paper, asking that the name of one endorser be omitted from the new note. The plaintiffs do not accept the proposition, they are unwilling to lose an indorser. They answer, on January 27, 1885, in these words : " We prefer to hold the note we now have to taking a new one, but will carry it for thirty to sixty days as it is, if nothing materially transpires to change the status of the security and the names ; this, however, is only on condition that you remit immediately the interest on the note for three months, to January 15."

All the phrases of this letter are freighted with the idea that the bank was unwilling to lose an indorser from the note. It is the language of caution and self-protection. They were willing to grant indulgence, but at no risk to themselves. They prefer to "hold the note" — "as it is" — "will carry it," not change it — not for any fixed, definite time — but " for thirty to sixty days." The very indefiniteness of the indulgence shows merely promise not to press, and not a contract to be bound by.

The maker's reply indicates that he was craving indulgence merely, and not expecting to make any legal contract for delay. " I trust you will give me sixty days," he writes. But the bank

was not disposed to grant any indulgence, if thereby anything transpires to change materially the status of the security or of the names. What, from their standpoint, can this mean, unless it be that they would be bound to do nothing which would expose to risk any rights then held by them. They were in any event to retain their status both as to the security and the names. And still the defendant assumes the position, that, while the plaintiffs were repelling all idea of a contract, they were really making one. We can have no doubt that the plaintiffs intended to reserve to themselves the right to enforce the note or not at their discretion. The learned counsel for the defendant suggests that the bank and its legal advisers well understood the law of the case, and intended to obtain the consent of the indorsers. We do not believe that they intended to do any act which would require their assent. The paper may not be in all respects worded with exact verbal propriety. But as a whole we think it strongly and impressively expresses a protest against the very misinterpretation now endeavored to be put upon it;—the intention shines through it.

We do not say, of course, that there may not be some force in the ingenious argument submitted in behalf of the defendant's position. Truth mixes with error in many cases, the alliance making error only the more difficult to contend against. We do say that the plaintiffs' position is much the most satisfactory.

The plaintiffs asked for nothing as a legal consideration for an extension. Over-due interest, and not all of that, only was required. They did not write for extra interest — it was "interest" that was wanted. The contention of the defense is that interest at seven per centum per annum was intended,— while there is not evidence in the case to show any such thing. When a settlement was to be made, out of which this note grew, the president of the bank wrote that they would accept notes with interest in advance at "six per cent." At another time a bank official offered to settle this note, by new notes which they would discount at seven per cent; which would be a legal transaction. The record of the case shows no other instance when interest of any kind was mentioned by the bank.

But interest for three months at seven per cent was remitted by the maker, he supposing, no doubt, that on that account his appeal for lenity would be more likely to prevail. "Which you ask," writes the maker. The plaintiffs had asked of him "interest," and no more,— presumptively, legal and not illegal interest.

The whole amount was kept. Why should it not be? More of legal interest was then due than the amount sent. It was a *pro tanto* protection to the indorser to keep it. The bank indorsed three months interest, not naming the amount of it. But if they did not appropriate the excess over six per cent, the law of Vermont appropriated it, upon the note, at the moment it was received. It could not be retained for an illegal purpose. It was never asked for for any purpose. There is not satisfactory evidence that the bank designed to use the excess illegally, in view of the finding of the judge, upon both law and fact, in favor of the plaintiffs. The judge ruled as a matter of law that the correspondence and the conduct of the parties did not operate to discharge the defendant. His decision of fact implies that the conduct was not incompatible with such finding. The case is before us on exceptions, and not on report of evidence or an appeal from the whole record. The finding at *nisi prius* gives all favorable intendments, which the facts can allow, to the plaintiffs. If it be necessary to find as a fact that the extra was not accepted as a consideration for extending the note, the finding below makes it so. And here it may forcibly be asked how the extra interest could be regarded as the consideration for the promise of the bank, when the promise was made without such consideration — before it was received.

The question, a doubtful one, whether the payment of usury would be a valid consideration for such an agreement as the defendant depends upon, never decided either in Vermont or Maine, need not now be entertained by us.

There may be stronger ground, possibly, for contending that the time of payment was not extended to the indorsers than there is that it was not extended to the maker — and this action is against an indorser only. Some distinction of the kind might appear, upon the face of the principal letter, to some persons.

It is a well settled principle, recognized by most courts, the doctrine of reservation, that a holder may agree with the maker to extend the contract as to him, and at the same time, as a part of the same agreement, reserve the right of action against all indorsers or sureties — and in such case those parties are not absolved from liability. Such reservation might prevent much of the expected benefit of an extention to the creditor, but that would not lessen the validity of the qualification annexed to it. In Big. on Bills and Notes, 598 to 607, the leading cases on this subject are reviewed and an abundance of authorities cited. See also *Bank* v. *Parsons*, 138 Mass. 53; a case bearing upon the point arising in the case at bar.

*Exceptions overruled.*

WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred. HASKELL, J., concurred in the result.