C. A. HAMILTON v. J. B. BENTON AND J. J. EDWARDS.

(Filed 29 September, 1920.)

**1. Pleadings—Counterclaims—Torts—Contracts—Statutes.**

In an action by the principal against his agent for conversion or embezzlement the defendant may not set up as a counterclaim a breach by the plaintiff of his contract to assume an indebtedness of the defendant, the action arising in tort and the counterclaim on contract. Rev., 481.

**2. Novation— Principal and Surety— Mortgages— Notes—Extension of Time—Contracts—Discharge.**

The owner gave a chattel mortgage upon his property to E., and afterwards sold the property to plaintiff, who agreed to assume the mortgage without the consent of the mortgagee, and afterwards the plaintiff sold the property to one M., with whom the mortgagee E. entered into a written contract extending the time of payment of the mortgage debt, and to foreclose the mortgage then past due, upon certain conditions of payment, resulting in foreclosure: *Held,* the mortgagor and the plaintiff were discharged from their obligations under the mortgage by the agreement of the mortgagee with M., whether regarded as a novation or substitution of M. as a new paymaster, or whether they be considered as sureties.

**3. Contracts—Novation—Substitution of Paymaster—Agreements—Evidence—Implied Contracts.**

A contract may be discharged by agreeing to the substitution of a new party in the place of one of the original ones, although the terms of the agreement otherwise remain the same; and such assent may be implied or evidenced by circumstances and by the conduct of the parties.

APPEAL by defendants from *Connor, J.,* at Fall Term, 1919, of LEE.

The defendant, J. B. Benton, executed and delivered to defendant, J. J. Edwards, a chattel mortgage on a printing press outfit, described in the record, to secure a certain note; afterwards Benton sold the mortgaged property to plaintiff, who agreed with Benton to assume and pay

the Edwards mortgage. Edwards did not consent to this agreement. Later plaintiff sold the mortgaged property to Mr. McNeeley, with whom Edwards entered into a written agreement to extend the time fixed for payment of the debt, and to postpone foreclosure of his mortgage, which was then past due, upon the condition that McNeeley make payments on the mortgage, as provided in the agreement. McNeeley made no payment, and ran away. The property was sold under the mortgage.

This action was, originally brought by plaintiff against J. B. Benton, and was referred to W. H. Weatherspoon, Esq. The referee found that Benton was indebted to plaintiff in the sum of $221.05, and that plaintiff was indebted to Benton in the sum of $454.46, for the Edwards mortgage, assumed by plaintiff in the purchase from Benton. At August Term, 1919, Lee Superior Court, Judge Connor ordered Edwards to be made a party defendant, so as to settle the equities between the parties, which was done. At the trial of this case, at November Term, 1919, Judge Connor, upon the pleadings and evidence, submitted to the jury the issue appearing of record, as to the indebtedness of Benton to Edwards on the note secured by said mortgage, and reserved the question of law arising upon the agreement between Edwards and McNeeley. The jury answered the issue according to Edwards' contention, finding that Benton was indebted to Edwards in the sum of $446.55. The judge set aside the verdict of the jury, and held, as matter of law, that the agreement between Edwards and McNeeley (although Benton or Hamilton was not a party to it), was a novation, and released Benton and Hamilton from the original mortgage; and thereupon refused to sign the judgment tendered by the defendants, and signed the judgment tendered by plaintiff, which is as follows:

"This cause coming on to be heard, and being heard, upon the exceptions filed by the plaintiff to the report of W. H. Weatherspoon, referee, heretofore filed in this cause, after hearing and considering the evidence and argument of the counsel, the court doth adjudge:

"First. That the plaintiff's first exception be sustained, and that the second exception, the finding of facts, be sustained, 'and that said second finding of facts be stricken from the records, and that no finding now be made in lieu thereof' (inserted by me, George W. Connor, J.), and the court being of the opinion that the liability assumed by C. A. Hamilton with respect to the Edwards mortgage mentioned in the bill of sale was as grantor to hold the defendant, J. B. Benton, harmless from and by reason thereof, and it further appearing that a final judgment with respect thereto cannot be rendered binding upon all parties that they may be concluded thereby, unless J. J. Edwards be made a party, it is. ordered that J. J. Edwards be made a party defendant; that process issue to bring him in; that he have leave of court to file pleadings against.

the plaintiff and defendant, either, if he be so advised, to enforce or have determined any liability claimed by him by reason of said mortgage and the note secured thereby; that plaintiffs and defendants have leave of court to file such pleadings as they may be advised for such purpose; and it appearing that the plaintiff Hamilton has offered for filing such pleadings, it is ordered that the same be filed, and that the defendant Edwards have 30 days to file answer thereto, after the service of summons, and the defendant Benton have thirty days as of this term to answer the same. It is further ordered that no costs be taxed against the defendant Benton, upon the trial of such issue as may be raised thereby.

"Second. That plaintiff's exception to the referee's second conclusion of law is sustained, and a finding with respect to the matters set out therein shall hereafter be made, based upon the findings of a jury upon the matters of fact involved therein, and necessary to a decision before any conclusion of law can be made.

"Third. The exception of the plaintiff that the referee erred in not holding as a matter of law upon the facts found that J. B. Benton received and took into his possession as agent and servant of the plaintiff the sum of two hundred and twenty-one and 5/100 dollars, and that he had failed to account for the same; that the plaintiff is entitled, as a matter of law, to have judgment against the person of the defendant is sustained, and the court holds, as a matter of law, that the plaintiff is entitled to such judgment. Except as herein noted, the findings of facts and conclusions of law of the referee are affirmed and adopted by the court.

"Upon the foregoing, the court doth further adjudge that the defendant, J. B. Benton, is indebted to the plaintiff, C. A. Hamilton, in the sum of two hundred and twenty-one dollars and five cents, with interest thereon from 1 October, 1914; and upon the return of an execution therefor, unsatisfied, in whole or in part, that execution issue against the person of the defendant according to law. It is further ordered that execution shall not issue upon the foregoing judgment until an issue that may be raised between the parties and J. J. Edwards shall have been determined, and that the question of costs as between the original parties is reserved until after such issues may have been tried. It is further ordered that the two items of $25 each, found by referee to have been paid to Edwards by Benton, shall be credited to Benton in final accounting between him and Hamilton."

The case being further heard afterwards, the judge modified the former decree, and ordered that the verdict in favor of Edwards and against Benton be set aside, and held, and finally so adjudged, that the written agreement between McNeeley and Edwards released, and dis-

6—180

charged, both plaintiff and Benton from any further liability on Benton's note to Edwards, and the mortgage securing the same, rejected the two payments of $25 each as credits on the mortgage debt, and held that they are not proper offsets to plaintiff's claim, they having been applied to the Fisher note, and that plaintiff is not indebted to Benton on the latter's counterclaim, or in any amount, and further adjudged that plaintiff recover of Benton $225.05, with interest from 1 October, 1914, being the amount wrongfully converted by Benton as agent of plaintiff, and that execution issue on said judgment, and that, upon a return thereof unsatisfied in whole or in part, execution issue against the person of Benton, as provided by law, and further adjudged the costs of the action against Benton, except a certain amount which he adjudged against both Benton and Edwards, and providing that upon payment of the cost adjudged against him, Edwards should be allowed to have the judgment for costs against him and Benton assigned to some other person as trustee for Edwards' use and benefit, as the law directs.

Defendants appealed.

*Hoyle & Hoyle for plaintiffs.*
*Seawell & Milliken for defendant Benton.*
*E. L. Gavin for defendant Edwards.*

WALKER, J., after stating the case: We need only decide a few questions so as to eliminate the immaterial ones from the case, and thus simplify those really presented, on the merits, and material to the decision of the case.

First. The counterclaim of Benton for breach of contract by plaintiff Hamilton is inadmissible, and cannot be set up against the plaintiff's cause of action for the conversion or embezzlement of Benton as plaintiff's agent. One is a tort, the embezzlement, and the other is a contract, that is, the assumption by plaintiff of the debt due by Benton to Edwards, which is evidenced by note, and the breach of that contract. They were two different and distinct transactions. Both did not "arise out of the transactions set forth in the complaint," nor was the one in contract "connected with the subject of the action," but they were foreign to each other, so that one cannot be a counterclaim against the other. Rev., 481; *Street v. Andrews,* 115 N. C., 417; *Bazemore v. Bridgers,* 105 N. C., 191. It is said in *Smith v. Young,* 109 N. C., 224: "A party cannot set up a counterclaim to an action for tort, matters which arise out of a contract unconnected with the transaction sued on."

It is said in 34 Cyc., pp. 662 and 663: "In actions sounding in tort a counterclaim not connected with the subject of the action nor arising out of the transaction forming the basis of the plaintiff's cause of action

will not be allowed, and thus counterclaims disconnected with the transaction sued on, or with the subject of the action have been disallowed in actions for conversion." See, also, the following cases to the same effect: *Scheunert v. Kaehler,* 23 Wis., 523; *Schaefer v. Empire Lith. Co.,* 28 N. Y. App. Div., 469; 51 N. Y. Suppl., 104; *Chambers v. Lewis,* 11 Abbott's Pr. (N. Y.), 210, Aff.; 28 N. Y., 454 (16 Abbott's Pr., 433).

Second. It can make little or no difference whether Benton and Hamilton are discharged from liability upon the note and mortgage given by Benton to Edwards, by novation, or, in other words, by the substitution of a new and sole paymaster under the agreement between Edwards and McNeeley, or whether they or either of them is discharged by an extension of time for payment given for the ease and accommodation of the debtor, and to the prejudice of his sureties—so that in the end they are discharged, or either of them is released. Viewing them as sureties, for the sake of argument, when Benton sold to Hamilton he became surety to the latter, who became principal debtor to the creditor, Edwards, if Edwards consented thereto, and when Hamilton sold to McNeeley, he became surety to the latter, and Benton and Hamilton were entitled to the usual rights of sureties. Edwards could not extend the time of payment to McNeeley without the consent of Benton and Hamilton, or, if he did so, they were discharged.

It could have been, if so agreed, that, by the several transfers or sales, a new paymaster, or principal debtor (McNeeley) was finally substituted with the other two as sureties. *Woodcock v. Bostic,* 118 N. C., 822; 32 Cyc., 191 to 195. But if this had been so, extension of time for payment or performance to the debtor, under a binding contract, discharged the surety, unless he consented thereto. *Smith v. Hays,* 54 N. C., 321; *Thornton v. Thornton,* 63 N. C., 211; *Fitts v. Messick Grocery Co.,* 144 N. C., 463. But there was no such consent. The reason of the rule is that, where there are sureties, as soon as a debt is due and payable, if the principal debtor does not pay it, the surety may pay it and immediately sue the principal for money paid to his use. If, therefore, the creditor agrees with the principal debtor in such manner as that he is bound by the agreement to postpone the day of payment, he puts it out of the power of the surety to pay the debt and sue the principal, and he thereby puts the surety in jeopardy; and the surety, being no party to the new contract for indulgence, is discharged from all liability. *Scott v. Harris,* 76 N. C., 205. In regard to this principle, 32 Cyc., at p. 191, says: "The rule is well settled that if a creditor or obligee, by a valid and binding agreement, without the assent of the surety, gives further time for payment or performance to the principal debtor, the surety will be discharged. And where two persons are bound for the same debt, and there is an obligation on the part of one to exonerate the

HAMILTON *v.* BENTON.

other, in the event of payment being enforced against such other, and this is known to the creditor, then the creditor cannot extend the time of payment to the party ultimately liable without discharging the other debtor, even though such debtor occupies the position of a principal debtor to the creditor, as where debtors become sureties by another assuming the indebtedness." See, also, *Tuchy v. Woods,* 122 Calif., 665; *Union Stove, etc., Works v. Caswell,* 48 Kansas, 689; *Steele v. Johnson,* 96 Mo. App., 147; *Long v. Patton,* 43 Texas Civ. App., 11; *Calvo v. Davis,* 73 N. Y., 211 (29 Am. Reports, 130), and 8 Hun., 222. The fact is that the mortgagee (Edwards) had full actual notice of the relation of the parties when he dealt with McNeeley, and, besides, he knew, and could not avoid knowing, that Benton was the original debtor, and he also knew that Hamilton, with whom he dealt in the substitution of McNeeley as debtor, had acquired Benton's rights. He acted with his eyes open—no man had better knowledge of the facts—and he deliberately and substantially so changed the original contract as to extinguish all claim on both Benton and Hamilton by the novation, or if they had remained as sureties, the extension of time by him to McNeeley would have discharged them as such. There is no way you can look at the case without concluding that Benton and Hamilton are no longer liable for this debt.

But we are of the opinion the judge was right in holding that McNeeley was finally and fully substituted for Benton and Hamilton as sole paymaster and debtor, Benton and Hamilton being retired as sureties and discharged from all obligation whatever. This is the correct view of the facts, but whichever way is given (*quacunque via data*), whether they were still sureties or McNeeley became the sole debtor, they are finally acquitted of all liability.

Third. A contract may be discharged by a change in the parties thereto; as by the substitution of a new party in the place of one of the original parties by the agreement of all, although the terms otherwise remain the same, which is fully discussed in *Redding v. Vogt,* 140 N. C., 562. This is a species of novation by assent of the parties thereto, and may exist in more complicated form than the simple form of which the above is an illustration. Such an assent may be implied, and such substitution and discharge may be evidenced by circumstances and by the conduct of the parties, showing an acquiescence in the change. It is not necessary, so long as they all finally consent in time, that they should all consent at the same moment. Elliott on Contracts, vol. 1, sec. 1867, citing numerous cases to sustain the text. See, also, *Lester v. Bowman,* 39 Iowa, 611, citing and approving *Tatlock v. Harris,* 3 T. R., 174, and *Heaton v. Angier,* 7 N. H., 387. In the first case it is said: "In neither of those cases was there an express agreement to discharge

the first debtor, but in both of them the agreement to accept another paymaster, and the agreement of the other to pay effected such a discharge." It has been repeatedly held in this jurisdiction that a firm agreement to accept another paymaster, in the place of the former one, based upon a consideration, discharges the original debtor, whether principal or surety, from personal liability. *Barnhardt v. Star Mills,* 123 N. C., 428; Clark on Contracts (2 ed.), 420. Tested by these standards, the transaction may have amounted, in our view, to one form of novation. Benton had already agreed in advance, and in writing, with Hamilton that the latter should "become solely responsible for the two claims." Hamilton procured Edwards to execute with McNeeley a written agreement by which Edwards agreed upon McNeeley as his paymaster. McNeeley expressly promised to pay the debt, and thereby made himself responsible therefor; and Edwards accepted this promise to pay. One (that is, McNeeley) promised to pay a certain amount in fixed installments; the other accepts this promise and changes thereby the due date, and postpones the maturity of the debt and mortgage. This discharged Hamilton and Benton, whether by reason of the extension of time for payment, or by the substitution of a new and sole principal.

We have referred to some of the facts of this case, as now presented, merely to illustrate the principles which controlled the final decision of it. They are admitted, or practically so, at least, and as thus put before us without substantial controversy as to what they are, we conclude that they authorize Judge Connor's judgment.

As to the questions of law reserved, including those relating to the counterclaim of Benton and the judgment in favor of Hamilton against him, the decision of the judge thereon is approved. The counterclaim will be stricken out, and the judgment in favor of Hamilton against Benton will stand, and process to enforce it will be issued, as ordered by the judge. In all other respects, the judgment is also affirmed.

The case is remanded with directions to proceed further therein, as ordered by the court below in its final judgment, and as the law requires.

No error.