FARMERS CO-OPERATIVE FERTILIZER COMPANY, INC., v. J. F. EASON, JR., MARY EASON AND B. C. EASON.

(Filed 21 September, 1927.)

1. **Bills and Notes—Indorser—Promise to Extend Time—Contracts—Consideration.**

   A promise of the payee of a note to an indorser after maturity of a promissory note to extend time for the payment of the note three or four years in consideration of the indorsement, is a sufficient consideration to enforce the promise between the parties to the agreement.

2. **Same—Parol Contracts—Written Contracts—Evidence.**

   Where one indorses a negotiable instrument after maturity upon a parol agreement with the payee that he will extend the time of payment of the note three or four years, the agreement is not required to be in writing, and being independent of the written note, does not fall within the rule that parol evidence will not be admitted to vary, alter or contradict the terms of a written contract.

3. **Same—Extension of Time—Definiteness.**

   An indorsement upon a promissory note made after maturity upon a parol agreement that the payee will extend the time of payment from that therein specified, for three or four years, is not so indefinite as to the time extended as to render the agreement unenforceable in that respect.

4. **Same—Limitation of Actions.**

   Where there is an extension of time given the maker of a note for three or four years in consideration of an indorsement made after the maturity of the instrument, the statute of limitations does not begin to run at least within the three years, and an action brought within a few months thereafter will not be barred.

APPEAL by defendant B. C. Eason from *Nunn, J.,* at June Term, 1927, of EDGECOMBE.

The plaintiff is a corporation organized under the laws of West Virginia, with its principal office in the city of Richmond, Virginia, and is engaged in selling fertilizer. The defendants, J. F. Eason, Jr. (referred to herein as J. F. Eason), and Mary Eason executed and delivered to the plaintiff the following promissory note:

"Richmond, Va.                    .                    5 May, 1921.

"On or before 1 January, 1922, after date, we promise to pay to Farmers Coöperative Company, Inc., or order, five thousand one hundred, thirty-three and 59/100 dollars ($5,133.59), with interest at 6 per cent from 1 July, 1920. Negotiable and payable at the Merchants National Bank, Richmond, Virginia.

"The makers and endorsers of this note hereby waive presentation, protest and notice of dishonor and the benefit of their homestead exemptions as to this obligation; and further agree to pay costs of collection, or an attorney's fee, in case payment shall not be made at maturity.

                                        "J. F. EASON, JR.,
                                        MARY E. EASON."

The note was secured by a deed of trust on property owned ʰy J. F. Eason in Emporia, Virginia. This deed of trust was subject to one of prior date in favor of other parties to whom J. F. Eason was indebted. After maturity demand was made for payment of the amount secured by each deed. J. F. Eason was in financial straits, and the evidence tends to show that on 8 February, 1922, a parol agreement was made between the plaintiff (through its agent B. D. Linney), J. F. Eason and B. C. Eason, to the effect that if B. C. Eason would indorse the note above set out the plaintiff would give J. F. Eason (R. 12) and B. C. Eason (R. 15) three or four years before it would call on them for payment. Under these circumstances B. C. Eason wrote his name on the back of the note on 8 February, 1922. The terms were substantially repeated in a letter from the plaintiff to B. C. Eason, written 23 March, 1922, in which it was said, "As far as we are concerned, in view of your indorsement we are willing to give J. F. Eason, Jr., at least three or four years to pay his note." The agreement with B. F. Eason was made at his home in Edgecombe County, North Carolina. Two credits are entered on the note: $68.25 paid 23 February, 1924, and $1,164.14 credited on 18 July, 1925, as the proceeds of the sale of the property. There was evidence that the credit of $68.24 was a payment made by J. F. Eason. Two issues were submitted to the jury: 1. In what amount, if any, is the defendant, B. C. Eason, indebted to the plaintiff? 2. Is the plaintiff's cause of action against the defendant, ·

B. C. Eason, barred by the statute of limitations? The court instructed the jury if they believed the evidence to answer the first issue $5,133.59 with interest from 1 July, 1920, less a credit of $68.25 as of 23 February, 1924, and a credit of $1,164.14 as of 18 July, 1925, and if they believed the evidence to answer the second issue No. Judgment was rendered for the plaintiff and the defendant, B. C. Eason, appealed upon errors assigned.

· J. F. Eason and Mary Eason filed no answer, and as to them no issues were submitted.

*H. H. Phillips for appellant.*
*George M. Fountain for appellee.*

ADAMS, J. The appellant takes the position that the contract purporting to extend the maturity of the note, even if sufficiently definite in point of time, was improperly admitted in evidence because it varied the terms of a written agreement. In this opinion we do not concur. If a contract is not within the statute of frauds the parties may elect to put their agreement in writing, or to contract orally, or to reduce some of the terms to writing and leave the others in parol. If a part be written and a part verbal, that which is written cannot ordinarily be aided or contradicted by parol evidence, but the oral terms, if not at variance with the writing, may be shown in evidence; and in such case they supplement the writing, the whole constituting one entire contract. *Cherokee County v. Meroney,* 173 N. C., 653.

The note sued on was executed by J. F. Eason and Mary E. Eason on 5 May, 1921, and was made payable on 1 January, 1922. It is admitted that B. C. Eason signed his name on the back of the note on 8 February, 1922, several months after it had been delivered to the payee and more than a month after its maturity. B. C. Eason had nothing to do with the original execution of the note; but at the time his name was written on it an agreement was made between himself, his brother, and the plaintiff, by the terms of which the date of maturity was extended in consideration of the indorsed signature, which was the only written part of the alleged agreement. Was the plaintiff precluded from showing that part of the contemporaneous agreement which was in parol? The answer to this question is given in a number of our decisions. In *Mendenhall v. Davis,* 72 N. C., 150, it is said that when the payee or a regular indorsee of a negotiable note writes his name on the back of it, as between him and a subsequent bona fide holder for value the law implies that he intended to assume the well known liabilities of an indorser, and he will not be permitted to contradict the impli-

cation; but that this rule does not apply between the original parties to a contract which is not in writing, although the indorsement of one or more parties may be evidence that some contract was made. It must always be a question of fact as to what the agreement was when the signature was written. The principle is approved and stressed in the very clear statement in *Hill v. Shields*, 81 N. C., 250: "It is settled in this State that parol testimony may be adduced under a blank indorsement to annex a qualification or special contract as between the immediate parties." These and other decisions which follow the earlier cases of *Love v. Wall*, 8 N. C., 313, and *Gomez v. Lazarus*, 16 N. C., 205, are reviewed in *Sykes v. Everett*, 167 N. C., 600, in which the doctrine is reaffirmed; and among later cases are *Lancaster v. Stanfield*, 191 N. C., 340, and *Trust Co. v. Boykin*, 192 N. C., 262.

The appellant cites *Smitherman v. Smith*, 20 N. C., 86, and *Terrell v. Walker*, 66 N. C., 244, in support of his contention. In the former the defendant indorsed the note as payee and offered to prove that at the time of the indorsement it was verbally agreed between him and the indorsee that if he would execute a deed to the indorsee for a certain tract of land the latter would strike out the indorsement, and that he had executed the deed in pursuance of this agreement. On appeal the Court held this evidence to be competent and said that it did not purport to set up by parol an executory contract variant from that which the law raised from the written indorsement; and in *Terrell's case* the proposed evidence was rejected on the ground that while the note purported on its face to be payable at once, the alleged contract made it payable at the option of the maker.

But in the case before us the signature on the back of the note is not that of the payee, but of a third party who at the time he wrote his name entered into a supplemental parol agreement with the payee and the maker, the signature constituting one of its material elements. The evidence was not objectionable as varying the terms of the original contract, for the rule that parol evidence will not be admitted to vary a written contract does not apply when the modification takes place after the contract has been executed. *McKinney v. Matthews*, 166 N. C., 576; *Adams v. Battle*, 125 N. C., 152; *Harris v. Murphy*, 119 N. C., 34; 10 R. C. L., 1034.

True, in several of the cited cases the indorser offered evidence in defense to prove the contemporaneous parol agreement; but if the principle upon which such evidence is admitted may be invoked in his defense, why should it not be admitted to establish his liability?

Other exceptions raise the question whether the contract based upon this evidence can be enforced. The appellant says that the time to

which the maturity of the note was extended was not certain or definite, and that the contract was therefore void. It becomes necessary, then, to ascertain whether his premise is correct, for it is elementary that one of the essential characteristics of bills and notes is certainty as to the time of payment—the word "certainty" permitting the operation of the rule that a thing is certain which can be made certain. 1 Parsons on Bills and Notes, 38; 8 C. J., 134, sec. 234; 426, sec. 628; 427, sec. 629.

In determining whether the appellant's conclusion rests upon a sound basis, we must keep in mind the relation of the parties and the terms of their agreement. These are embraced in a narrow compass and we need not turn aside to consider collateral questions. For two reasons, at least, we are not concerned with the application of the general rule that a surety may be discharged by a contract to indulge the principal in a promissory note for a definite and limited period of time, founded on a sufficient consideration, reserving no right to proceed against the surety, and made without his assent: (1) the defendant had no connection with or relation to the original execution of the note and was not a surety; (2) he was one of the parties in the supplemental agreement to whom the plaintiff granted the alleged extension. *Forbes v. Sheppard,* 98 N. C., 111; *Bank v. Sumner,* 119 N. C., 591; *Hamilton v. Benton,* 180 N. C., 79; C. S., 3102. It is equally certain that the time of payment was not dependent upon any contingency or extraneous condition, such for example as a promise to pay at some indefinite time when the defendant might have available funds *(McNeill v. Man. Co.,* 184 N. C., 421); also that the rights of a bona fide purchaser without notice from the payee are not involved. *Mendenhall v. Davis, supra.* The parties who entered into the supplemental agreement are parties to this action.

With respect to the certainty of the time of payment, what is the meaning and scope of their agreement? We may first dismiss the contention that there was no consideration by recalling the principle that to make a consideration it is not necessary that the person making the promise should receive or expect to receive any benefit; it is sufficient if the other party be subjected to loss, detriment, or inconvenience. *Brown v. Ray,* 32 N. C., 73; *Kirkman v. Hodgin,* 151 N. C., 591; *Institute v. Mebane,* 165 N. C., 644; *Cherokee County v. Meroney, supra.* In effect the plaintiff agreed, in consideration of the defendant's indorsement of the note on 8 February, 1922, not to demand payment of the defendant or of J. F. Eason until the expiration of three or four years from that date; in effect the defendant agreed, in consideration of the plaintiff's promise not to sue for a period of three or four years, to become liable with J. F. Eason for the payment of the note at the time agreed on. As between them and the payee would they have

been liable if they had executed a joint note payable three or four years after date? In *Robertson v. Spain,* 173 N. C., 23, it was held that a promise made by the plaintiff as indorsee of two notes "to take up and carry the notes till fall" was not a binding agreement not to bring suit for a definite period, so as to release one of the defendants who claimed to be surety, but that it was the mere expression of an intention not to force collection till the fall. The facts there are altogether at variance with those in the case before us. In *Shoe Store Co. v. Wiseman,* 174 N. C., 716, the defendant, indorser of a note for the maker who had become bankrupt, wrote to the plaintiff: "File your claim against the bankrupt court and get your share; what is left I will pay." The Court held that the letter contained an absolute promise to pay an ascertainable sum at an ascertainable date, and that the statute of limitations did not begin to run until the sum promised was definitely made known. It has been decided in other cases that where services are performed under a contract that compensation is to be provided for in the will of the party receiving the benefit and the latter dies intestate or fails to make such provision, the contract is then broken and, not only that suit may be brought after the breach, but that it cannot be maintained before. *Miller v. Lash,* 85 N. C., 51; *Freeman v. Brown,* 151 N. C., 111; *Helsabeck v. Doub,* 167 N. C., 205.

The turning point in these cases was certainty or uncertainty in the time of payment; and so it is in the decisions of other states. An agreement to extend the time until suit was necessary to prevent the bar of the statute of limitations was upheld in *Aiken v. Posey,* 35 S. W., 732; but a promise to make an extension of thirty or sixty days "if nothing transpires to change the status of the security" was held by the Supreme Judicial Court of Maine, not a contract to be bound by, but the language of caution and self-protection. *Bank v. Dow,* 9 Atl., 730. The case last cited may easily be distinguished from *Hamilton v. Prouty,* 50 Wis., 592, 36 A. R., 866, in which the appellate court held an extension of payment "for twenty or thirty days" to be sufficiently definite. There the defendant Crossman executed his note to Prouty and LeFevre, who indorsed and delivered it to the plaintiff. When suit was brought they alleged by way of defense that after the maturity of the note the plaintiff for a valuable consideration had twice extended the time of payment. In the opinion it was said: "The testimony shows that the first agreement for an extension made by Hamilton and Crossman was for twenty or thirty days, and it is urged that this was too indefinite to operate as a discharge of the indorsers. We are of the opinion, however, that the period must be regarded as definite for at least twenty days."

So in the present case an extension of time for three or four years was definite at least for three years. Conversely, the defendant's indorsement under the circumstances disclosed by the undisputed evidence was an agreement to be bound for the payment of the note at the end of the third year if payment were then demanded. After the expiration of the third year payment was demanded; meantime suit could not have been maintained. *Ferguson v. Hill,* 21 A. D., 641; *Bank v. Woodward,* 20 A. D., 566.

We need express no opinion as to whether the plaintiff could have elected to await the expiration of the fourth year to bring suit, or what effect, if any, such election would have had upon the statute of limitations. The defendant did not raise this point, but contended that the action was barred as to him because more than three years had intervened between the date of his indorsement and the institution of the action. In our opinion the cause of action arose at the expiration of three years from 8 February, 1922, and as the summons was issued a few months thereafter the action was not barred, whether the defendant's liability was that of joint maker, indorser, or guarantor. Presentation, protest, and notice of dishonor were waived, and the evidence indicates that the makers of the note are not financially responsible. C. S., 3044; *Sykes v. Everett, supra; S. v. Bank,* 193 N. C., 524; *Mudge v. Varner,* 146 N. C., 147; *Jenkins v. Wilkinson,* 107 N. C., 707; *Jones v. Ashford,* 79 N. C., 172. We find

No error.